**UNITED STATES of America,
Appellant,**

v.

**HASKEL ENGINEERING & SUPPLY
COMPANY, Appellee.**

**No. 21104.**

United States Court of Appeals
Ninth Circuit.

June 21, 1967.

Mitchell Rogovin, Asst. Atty. Gen., Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfeld, Solomon L. Warhaftig, Attys., Tax Div., Dept. of Justice, Washington, D. C., John K. Van de Kamp, William M. Byrne, Jr., U. S. Attys., Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Walter S. Weiss, Richard W. Craigo, Goodson & Hannam, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge.

This tax case concerns certain deductions claimed by appellee for the taxable years 1957, 1958 and 1959. From 1946 to 1952 Richard Hayman and Don Driskel operated a partnership under the name of Haskel Engineering & Supply Company. Hayman had a sixty per cent interest and Driskel a forty per cent interest. In 1952 the business was converted into corporate form, the corporation involved here issuing 1500 shares of stock and $64,000 in debenture bonds for the operating assets of the business. Each partner took his proportionate share of the stock and of the bonds. The bonds were to mature 20 years from the date of issue and specified an interest rate of four per cent, payment of which was in no way contingent upon the earnings of the corporation. They were not by their terms subordinated to any subsequently incurred debt. The bonds were redeemable prior to maturity at the option of the corporation, at a premium of two per cent for every year that the maturity was accelerated.

During the taxable years in question the appellee corporation paid the prescribed interest to the registered owners of the outstanding bonds. During 1957 $30,000 of the bonds were redeemed and a premium of $9,600 paid. In 1958 $32,000 were retired with a premium of $10,500. In the taxable years in question the corporation deducted, under § 162(a), the total amount of interest and under § 163(a) the redemption premiums paid during each year. The Commissioner disallowed these deductions and assessed deficiencies.

The taxpayer corporation uses the reserve method of accounting for bad debts. In determining what amounts should be added to the reserve each year the appellee's officers reviewed each individual account. After considering factors such as the age of the accounts and the larger number of smaller accounts, the officers estimated the total potential losses on the outstanding accounts receivable. A sufficient amount was then added to the reserve to bring it to a level sufficient to protect against these losses. On the other hand, the Commissioner calculated the addition by using the average loss ratio for the preceding years since 1954. Because of the difference in figures, the Commissioner disallowed portions of the appellee's claimed bad debt deductions, and assessed deficiencies.

The total deficiencies assessed by the Commissioner were paid by appellee, which then brought suit to recover these taxes. The district court, having jurisdiction under 28 U.S.C. §§ 1340, 1346(a)(1), held that the appellee was entitled to all of the claimed deductions. We have jurisdiction of the appeal under 28 U.S.C. § 1291.

I. *The Bond Interest*

The government takes issue with the trial court's finding that the debenture bonds were genuine debt instruments which created a debtor-creditor relationship between the holders thereof and the appellee. The government invokes the rule that tax consequences depend upon the economic substance of the transaction rather than the form. See Commissioner of Internal Revenue v. P. G. Lake, Inc., 356 U.S. 260, 266–267, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958). The government's problem is that the economic reality of the situation is in accord with the claimed deduction.

Section 163(a) (26 U.S.C. § 163(a)) allows a deduction for interest paid or

accrued on indebtedness. The sole question in the present case relating to the § 163(a) deduction for interest payments is whether the bonds were truly indebtedness. The district court concluded that the bonds actually represented a debt, and we find no reason to upset this finding. The bonds were unconditional in their requirements that the interest be paid on a certain date and that the principal should be paid at a precise date in the future. In case of default the entire debt was accelerated. The amount and obligation of the interest payments were in no way conditional upon the earnings of the corporation. The bonds did not provide for participation in management or subordination. The bonds were freely transferable. These factors sufficiently disclose the true nature of the transaction as being the creation of a debt, rather than additional capital investment. The government apparently does not contend that the corporation was undercapitalized and the bonds should therefore be considered capital. Its sole substantial argument seems to be that the bonds should be considered capital because they were owned by the shareholders in the same proportion as the stock. But such a result is to be expected where the bonds originated as payment for the partnership interest along with stock. There is no evidence here that either bondholder-shareholder was in any way restricted in transferring his bonds. Thus, the similarity in holdings might be altered.[1]

We agree with the trial court that the bonds represented valid and enforceable debts owed by the corporation, and that therefore the interest was properly deductible under § 163(a).

## II. *The Bond Redemption Premiums*

Appellee claims that the bond redemption premiums were an "ordinary and necessary" business expense within the meaning of § 162(a). Although we have previously concluded that the bonds truly represented a debt, we cannot agree that the bond redemption premiums were deductible within the meaning of § 162(a).

In the 1957 redemption, appellee paid a premium of $9,600 in redeeming $30,000 of bonds. This represents a premium of 32 per cent. In the 1958 redemption, $32,000 in bonds were redeemed with a premium of $10,500 or almost 33 per cent.[2] The government points out that appellee would have been financially ahead had it invested the money in United States Treasury Bonds rather than redeeming. One requirement, inherent in the concept of "ordinary and necessary" expenses, is that any payment asserted to be allowable as a deduction be reasonable in relation to its purpose. Commissioner v. Lincoln Electric Co., 176 F.2d 815, 817 (6th Cir. 1949), cert. denied, 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 586 (1950).[3] An expenditure may be, by its nature, ordinary and necessary, but at the same time it may be unreasonable in amount. In such a case only the portion which was reasonable

---

1. The facts of this case are not comparable to those of Covey Investment Co. v. United States, 377 F.2d 403 (10th Cir. 1967). In *Covey*, the court of appeals affirmed the district court in its action of *upholding* the Commissioner's action in disallowing the deduction. In *Covey*, the notes were payable in cash *or* in stock; at maturity the notes were not paid either in cash or stock; the interest payments continued, mostly at 12 per cent, for 32 years after maturity, during which time the corporation borrowed and repaid over two million dollars in new loans at interest varying from 3¾ to 12%; while paying liberal cash dividends. Between 1950 and 1955, the corporation loaned over $330,000 to the three principal shareholders on their personal notes at 5% interest. All this was not "arm's length dealings".

2. It should be noted that it was the bondholders, as officers by virtue of their shareholdings, who voted to pay themselves this premium.

3. This case was decided under the Internal Revenue Code of 1939. However, it is the same "ordinary and necessary" requirement of both § 23(a) of the 1939 Code and § 162(a) of the 1954 Code with which we are here concerned.

would qualify for a deduction under § 162 (a). As the court noted in *Lincoln Electric,* supra, "Clearly it was not the intention of Congress to automatically allow as deductions operating expenses incurred or paid by the taxpayer in an unlimited amount." *Ibid.* The 32 per cent or greater premiums paid in the present case appear to us to have been clearly unreasonable in amount. See Baltimore Steam Packet Co. v. United States, 180 F.Supp. 347 (Ct.Cl.1960), where a seven per cent premium was justified under the facts of that case.

The district court erred in allowing as a deduction the full amount claimed by appellee for bond redemption premiums. Appellee is entitled to a deduction for an amount of bond redemption premiums reasonable under the facts present in this case.

### III. *The Bad Debt Deductions*

Both parties have agreed that appellee had the burden on trial below of showing that the Commissioner had abused his discretion in determining the amounts of reasonable additions to the reserve for bad debts. The district court impliedly concluded that appellee had met this burden. We disagree.

██ The nature of the burden of overcoming the Commissioner's discretionary determinations was clearly set out in this court's opinion in Calavo, Inc. v. Commissioner of Internal Revenue, 304 F.2d 650 (9th Cir. 1962). In that case we noted that the Commissioner had not considered certain factors, in exercising his discretion as to a reasonable addition to the reserve for bad debts. Yet we were careful to explain that it is not proper to substitute the court's judgment for the Commissioner's discretion. We ordered the case returned to the Commissioner for the exercise of his discretion in view of the previously unconsidered question. The standard remains that the Commissioner will be overruled only where there is a clear showing of abuse of discretion.[4] Though appellee's approach might be more philosophically accurate, such accuracy does not show an abuse of discretion by the Commissioner.

The judgment is affirmed as to the bond interest deductions. As to the bond redemption premium deductions, the judgment is reversed and the case remanded with instructions to determine, and allow a deduction for, a reasonable bond redemption premium. As to the bad debt deduction, the judgment is reversed and the case is remanded with instructions to enter judgment for the United States.

---

4. Appellee tells us that the amounts involved are *de minimis* in relation to its total receivables. If the amounts are so insignificant, we can wonder whether it would be possible to demonstrate that the Commissioner had abused his discretion.