DAVID L. STODDARD and ELIZABETH M. STODDARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stoddard v. Commissioner
Docket No. 4280-80.
United States Tax Court
T.C. Memo 1982-720; 1982 Tax Ct. Memo LEXIS 26; 45 T.C.M. (CCH) 323; T.C.M. (RIA) 82720; December 14, 1982. Barry Becker, for the petitioners. William A. Clarke, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, *27 Judge: Respondent determined a deficiency of $4,403 in petitioners' 1976 Federal income tax. After concessions, the issues for decision are: 1. Whether expenses incurred by petitioner David L. Stoddard in the maintenance and operation of a private aircraft are deductible educational expenses; 2. Whether petitioners are entitled to depreciation deductions with respect to such aircraft; and 3. Whether petitioners are entitled to deduct certain miscellaneous fees paid on such aircraft under either section 162 or section 164. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. David L. Stoddard (hereinafter petitioner) and Elizabeth M. Stoddard, husband and wife, resided in Scottsdale, Arizona, when they filed their 1976 joint Federal income tax return, and when they filed their petition in this case. During 1976, petitioner was employed by Hughes Airwest (hereinafter Hughes or the company) as manager of DC-9 flight training. Petitioner's job at Hughes included managing 12 DC-9 flight instructors; making schedules for these instructors; overseeing *28 the training of pilots; developing a philosophy for the Hughes manual; scheduling approximately 700 pilots for proficiency checks; and insuring that all of the company's DC-9 pilots were qualified at all times. Hughes required petitioner to have a valid DC-9 pilot's license, and, although dealing with administrative matters was a large part of petitioner's work, he also operated DC-9 aircraft for Hughes as a commercial pilot. During 1976, the only airplanes which petitioner flew for Hughes were DC-9's. During that year, Hughes's DC-9 pilots normally piloted the company's planes approximately 70 to 75 hours per month. At all relevant times herein, petitioner operated DC-9's as a commercial pilot an average of approximately 5 hours per month for Hughes. He also operated DC-9's as a training pilot an average of approximately 5 hours per month for the company. A DC-9 pilot ordinarily should fly a DC-9 a minimum of 5 to 10 hours per month to maintain top proficiency, and some DC-9 pilots need to fly more than 10 hours per month to maintain top proficiency. The Federal Aviation Administration ("FAA") regulates and certifies the skill levels required of commercial pilots. During *29 1976, the FAA required all licensed DC-9 pilots to undertake a minimum of 3 takeoffs and landings in a DC-9 or a ground simulator every 90 days, and to undergo a proficiency check in a simulator once every 6 months, in order to retain their pilot licenses. Hughes, in 1976, furnished these minimum training requirements to all of its DC-9 pilots. The ground simulator experience that Hughes furnished its DC-9 pilots enabled the pilots to practice instrument flying once every 6 months for a period of 4 hours. This ground simulator experience, however, differed in several respects from actually flying a DC-9 on instruments. While actually flying, a pilot experiences the actual flight environment, including all communications and traffic control information. In a ground simulator, on the other hand, a pilot communicates with only one other individual, and he must simulate or imagine the traffic control environment. Also, a ground simulator does not create the anxiety level that is present when actually flying an aircraft, nor is it possible to create in a ground simulator the element of surprise that occurs while actually flying an aircraft. In 1975, petitioner purchased and placed *30 in service a Cessna 172 single engine four-place airplane. A Cessna 172 is a far simpler aircraft than a DC-9. A DC-9 has a gross takeoff weight of approximately 108,000 pounds; a power package consisting of two jet engines; a wingspan of approximately 89 feet; a top speed of approximately 400 miles per hour; and a maximum cruising altitude of 35,000 feet. On the other hand, a Cessna 172 has a gross takeoff weight of approximately 2,300 pounds; a power package consisting of a single propeller engine; a wingspan of 36 feet; a top speed of 162 miles per hour; and a maximum cruising altitude of 10,000 feet. A DC-9 and a Cessna 172 each have the seven basic flight instruments, however, and in each plane the flight maneuvers are basically done in the same manner. During 1976, petitioner piloted his Cessna 172 a total of 48 hours and 40 minutes, of which 25 hours and 10 minutes were flown on instruments. While petitioner was flying his Cessna 172 on instruments, he was wearing a hood which confined his vision to the aircraft's instrument panel. Petitioner flew his Cessna on instruments to and from 16 different cities in California, Arizona, New Mexico, and Texas. In choosing his *31 flight destinations, petitioner sought opportunities to fly over different types of terrain and in different air traffic control environments. In addition, petitioner considered the availability of necessary ground facilities. [2]
During 1976, petitioner also took two vacations with his Cessna. The flight time of those vacation trips was 16 hours and 20 minutes.Petitioner did not rent or charter his Cessna in any separate money-making activity in 1976. On his 1976 Federal income tax return, petitioner claimed, with respect to his Cessna, a deduction in the amount of $4,026. This $4,026 amount represented depreciation in the amount of $2,526 and maintenance and operating expenses in the amount of $1,500. Petitioner also deducted on his return as "taxes" $544 in fees paid on his Cessna. In the notice of deficiency, respondent disallowed the $4,026 deduction claimed for depreciation, maintenance and operating expenses, and $98.58 of the $544 claimed as "taxes." The $98.58 represented payment for Arizona Aircraft Regulation *32 fees, Federal Communications Commission ("FCC") Radio License fees, Federal Use Tax on Civil Aircraft, and Arizona Aeronautics Division license fees. [3]
OPINION We must first determine whether petitioner is entitled to a deduction for maintenance and operation expenses of his Cessna 172. Section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business, including amounts expended for education. Educational expenses are deductible business expenses when the education maintains or improves the skills required by an individual in his employment. Section 1.162-5(a)(1), Income Tax Regs. In order for an educational expense to be deductible, the education must bear a direct and proximate relation to the taxpayer's trade or business. Wassenaar v. Commissioner,72 T.C. 1195, 1201 (1979); *33 Carroll v. Commissioner,51 T.C. 213, 218 (1968), affd. 418 F. 2d 91 (7th Cir. 1969). Whether there is a direct and proximate relation between the education and the employment is a question of fact. Baker v. Commissioner,51 T.C. 243, 247 (1968). Petitioner has the burden of establishing such a relationship. Wassenaar v. Commissioner,supra at 1199; Rule 142(a), Tax Court Rules of Practice and Procedure. A precise correlation is not necessary, and the educational expenditure need not be for training which is identical to the taxpayer's prior training so long as it enhances existing employment skills. Boser v. Commissioner,77 T.C. 1124 (1981); Lund v. Commissioner,46 T.C. 321, 331-332 (1966). Petitioner argues that the additional flying experience which he acquired in operating his Cessna maintained or improved the skills required in his employment within the meaning of section 1.162-5, Income Tax Regs. He contends that he was unable to obtain sufficient *34 on-the-job flying hours to maintain top proficiency as a DC-9 pilot, which was required by Hughes. Respondent, on the other hand, maintains that petitioner's operation of his Cessna 172 did not maintain or improve skills required in his employment and, consequently, disallowed petitioner any deduction for his claimed airplane maintenance and operation expenses. Respondent further contends that such expenses were not ordinary and necessary business expenses within the meaning of section 162(a). For the reasons set forth below, we hold for petitioner on this issue. Neither the FAA nor Hughes required petitioner to have additional instrument flying experience.The evidence adduced at trial, however, established that flying any aircraft with the seven basic instrument gauges, such as petitioner's Cessna 172, would improve the basic skills required to fly a DC-9 on instruments. In Boser v. Commissioner,supra, the taxpayer served as a second officer (flight engineer) aboard DC-8 aircraft for United Airlines, Inc. (hereinafter UAL). In order to be hired as a second officer with UAL, an individual was required to have a commercial pilot's license with instrument *35 rating. Once a second officer was hired, however, he was not required to keep such license current. UAL prohibited its second officers from manipulating the controls of jet aircraft in the normal course of operations. However, each crew member, including the second officer, was to be thoroughly familiar with the duties of the other crew members and was to be able to take over such duties in the event of an emergency. The taxpayer in Boser purchased and operated a Cessna light aircraft in order to maintain his commercial pilot's license with instrument rating. Although neither the FAA nor UAL required the taxpayer to have such flying experience, we found that the taxpayer, for purposes of deducting his flying costs as an educational expense, had shown a direct and proximate relationship between his piloting of a Cessna light aircraft and his employment skills as a second officer. Boser v. Commissioner,supra at 1131. The facts of the instant case are even stronger than those in Boser in so far as establishing a direct and proximate relationship between petitioner's trade or business and his Cessna flying experience. While the taxpayer in Boser *36 was prevented from manipulating the controls of jet aircraft except in an emergency, petitioner regularly operated the controls of jet aircraft in his capacity as a commercial pilot for Hughes during 1976.Accordingly, we find that petitioner has shown a direct and proximate relationship between his piloting of his Cessna aircraft and his employment skills as a commercial pilot and the director of Hughes's DC-9 flight training. See also Lund v. Commissioner,supra.
Given that petitioner's instrument training in his Cessna 172 improved the skills required in his employment within the meaning of section 1.162-5, Income Tax Regs., his expenses are deductible only to the extent that they meet the ordinary and necessary test of section 162(a). Boser v. Commissioner,supra at 1132; Ford v. Commissioner,56 T.C. 1300, 1305-1307 (1971), affd. per curiam 487 F. 2d 1025 (9th Cir. 1973); section 1.262-1(b)(9), Income Tax Regs.
As used in section 162(a), "ordinary" has been *37 defined as that which is "normal, usual, or customary" in the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495 (1940). Respondent maintains that since Hughes does not require its DC-9 commercial pilots to operate light aircraft, and since Hughes provides its DC-9 commercial pilots with all the training required by the FAA, we should conclude that the expenses petitioner incurred in piloting his Cessna 172 are not ordinary within the meaning of section 162(a). We disagree. That a particular activity is not required by the taxpayer's employer does not prevent such activity from being ordinary. See Boser v. Commissioner,supra at 1132; Carlucci v. Commissioner,37 T.C. 695 (1962). Petitioner's employment responsibilities at Hughes required him to maintain top proficiency as a DC-9 pilot. Moreover, he believed that his ground duties as manager of DC-9 flight training prevented him from accumulating enough flying time to maintain such proficiency, particularly in the realm of instrument flying. Petitioner piloted a *38 DC-9 an average of 5 hours per month as a commercial pilot and an additional 5 hours per month as a training pilot for Hughes. Respondent's expert witness, an FAA safety inspector and a DC-9 pilot, testified that he himself would need a minimum of 10 hours per month flying time in a DC-9 to maintain top proficiency, and that some individuals would need more hours than that in order to maintain top proficiency.Respondent's expert witness further testified that the flight training that petitioner gained from flying his Cessna would enable him to better perform his employment duties as a DC-9 pilot, particularly with respect to flying a DC-9 on instruments. Under these circumstances, we find that petitioner's piloting of his Cessna aircraft was an ordinary expenditure within the meaning of section 162. See Boser v. Commissioner,supra at 1132. "Necessary" has been construed to mean "appropriate" or "helpful," rather than "indispensable" or "required." Ford v. Commissioner,supra at 1306. The record clearly establishes that petitioner's piloting *39 of his Cessna, although not required by Hughes, was helpful in maintaining or improving the flying skills which he needed to perform his job. However, to the extent that an expense is unreasonable, it is not necessary. In such case, only the portion which is reasonable is deductible under section 162. United States v. Haskel Engineering & Supply Co.,380 F. 2d 786, 788-789 (9th Cir. 1967); Boser v. Commissioner,supra at 1132. What is a reasonable expenditure is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Boser v. Commissioner,supra at 1133; Voigt v. Commissioner,74 T.C. 82, 89 (1980). The record shows that petitioner used his Cessna for two vacation trips, wherein he accummulated on the Cessna a total of 16 hours and 20 minutes of flying time. Expenditures for vacations are clearly nondeductible personal expenses. Section 262; section 1.262-1(b)(5), Income Tex Regs. *40 ; Fausner v. Commissioner,413 U.S. 838 (1973). We thus find that of the $1,500 in maintenance and operating expenses that petitioner incurred with respect to his Cessna in 1976, the portion that is allocable to 16 hours and 20 minutes of flight time was a nondeductible personal expenditure.On the record as a whole, we find that the portion of such $1,500 amount that is allocable to 32 hours and 20 minutes of flight time was a reasonable expense under the circumstances.Accordingly, petitioner is entitled to a deduction in 1976 for the maintenance and operating expenses allocable to 32 hours and 20 minutes of flight time on his Cessna 172. [4] See Boser v. Commissioner,supra at 1134; Cf. Rensselaer Polytechnic Institute v. Commissioner, 79 T.C.     (December 1, 1982). *41 Section 167 provides a depreciation deduction for the exhaustion, wear and tear of property used in a trade or business or held for the production of income. Because we have found that petitioner's use of his Cessna was directly related to his trade or business, we hold that he is also entitled to depreciation deductions in connection with his Cessna. [5] We thus find that petitioner is entitled to deduct the portion of the $2,526 in depreciation of his Cessna in 1976 that is allocable to 32 hours and 20 minutes of flight time. [6] The portion of the $2,526 in depreciation that is allocable to 16 hours and 20 minutes of flight time is not deductible. We must next determine whether petitioner is entitled to deduct *42 certain miscellaneous fees paid on his Cessna in 1976.Section 164(a) allows a deduction for certain state and local property, income, and sales taxes paid in the taxable year. The 1976 version of section 164(a) did not allow a deduction for any Federal taxes. Taxes not specifically delineated by section 164(a) are not deductible under section 164. Section 1.164-1(a), Income Tax Regs. In the statutory notice of deficiency, respondent allowed petitioner a $445.42 deduction for state property taxes with respect to his Cessna.Respondent disallowed $98.58 that petitioner paid for Arizona Aircraft Registration fees, Arizona Aeronautics Division license fees, FCC Radio License fees, and Federal Use Tax on Civil Aircraft. Petitioner has failed to show that the Arizona Aircraft Registration fees and the Arizona Aeronautics Division license fees constitute state or local property, income, or sales taxes. Consequently, we hold that these fees are not deductible under section 164(a). See section 1.164-1(a) and 1.164-3(c)(3), Income Tax Regs. Further, since the 1976 version *43 of section 164(a) did not allow deductions for any Federal taxes, we find that the FCC Radio License fees and the Federal Use Tax on Civil Aircraft paid by petitioner are not deductible under section 164(a). Taxes and fees that are not deductible pursuant to section 164(a) may still be deductible under section 162 as ordinary and necessary business expenses. Petitioner has shown that in order for him to use his Cessna 172 in an educational capacity, it was necessary for him to incur the Arizona Aircraft Registration fees, the Arizona Aeronautics Division license fees, the FCC Radio License fees, and the Federal Use Tax on Civil Aircraft. Accordingly, we find that the portion of those fees that is allocable to 32 hours and 20 minutes of flight time during 1976 is allowable as a deduction under section 162. [7] The portion of such fees allocable to 16 hours and 20 minutes of flight time is a nondeductible personal expenditure. See section 262; section 1.262-1(b)(9), Income Tax Regs.; Cf. Rensselaer Polytechnic Institute v. Commissioner, 79 T.C.     (December 1, 1982); *44 Fausner v. Commissioner,supra at 839. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. In 1976, petitioner could not afford the purchase price or the operating cost of a DC-9, and a DC-9 was unavailable for rent on an hour-by-hour basis.↩
3. In the statutory notice, respondent also contended that petitioner was required to recapture in 1976 the investment tax credit claimed by petitioner with respect to his Cessna in 1975. On brief, however, respondent conceded this matter in petitioner's favor.↩
4. A proper computation of deductible maintenance and operating expenses would involve dividing 32 1/3 (number of hours of qualified educational flight time in 1976) by 48 2/3 (number of total hours of flight time in 1976), and multiplying the resulting quotient by $1,500 (total maintenance and operating expenses incurred by petitioner with respect to his Cessna in 1976). Cf. Rensselaer Polytechnic Institute v. Commissioner,↩ 79 T.C.     (December 1, 1982).
5. See Korth v. Commissioner,T.C. Memo. 1981-462; Diemer v. Commissioner,T.C. Memo. 1975-127; Shaw v. Commissioner,T.C. Memo. 1969-120↩. 6. A proper computation of deductible depreciation would involve multiplying $2,526 (total depreciation of petitioner's Cessna in 1976) by the quotient discussed in footnote 4 above.↩
7. A proper computation of deductible fees would involve multiplying $98.58 (total miscellaneous fees paid by petitioner with respect to his Cessna in 1976) by the quotient discussed in footnote 4 above.↩