CLEVELAND RAMSEY and GLADYS R. RAMSEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ramsey v. Commissioner
Docket No. 13708-83
United States Tax Court
T.C. Memo 1989-64; 1989 Tax Ct. Memo LEXIS 64; 56 T.C.M. (CCH) 1236; T.C.M. (RIA) 89064; February 13, 1989
Clyde R. Maxwell and Russell P. Briesacker, for the petitioners. Douglas S. Polsky, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated April 11, 1983, respondent determined a deficiency in the amount of $ 20,385 in petitioners' Federal income tax and an addition to tax pursuant to section 6653(a)[1] in the amount of $ 1,019 for taxable year 1979. The sole issues for our consideration are: (1) whether petitioners are entitled to deductions for business expenses, and (2) if not, whether petitioners are liable for an addition to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Cleveland and Gladys Ramsey, husband and wife, resided in Los Angeles, California, at *66 the time of filing the petition herein. Petitioners, cash basis taxpayers, timely filed a joint income tax return for taxable year 1979. After an initial inquiry, respondent assessed and collected from petitioners a deficiency in tax in the amount of $ 524 and an addition to tax in the amount of $ 97.85 for taxable year 1979. Respondent then conducted another examination and determined the existence of further deficiencies and issued the notice of deficiency herein. [2]
Petitioner Cleveland Ramsey (hereinafter referred to singularly as petitioner) was employed as a salesman by the Builder's Supply Center (Builders), operated by H. Joseph Terrence Builders, a California corporation holding a general contractors license, was in the business of providing home improvements to single family residences. In *67 1979 Builders employed 25 salesmen, including petitioner, who secured customers, wrote work contracts and oversaw the performance of the jobs which were performed by subcontractors. The main contract was held by Builders, not the individual salesman, and Builders received all payments. Builders was responsible for paying all costs properly associated with contract performance when invoices and bills were submitted by the individual salesman. Similarly, Builders' arrangement with petitioner required Builders to pay all costs associated with Builders' jobs under petitioner's supervision although petitioner believed that costs due to mistakes made on those jobs were his responsibility. Builders had two methods of paying its salesmen. On small jobs, which required the services of only one or two subcontractors, Builders would retain ten percent of the total contract price, and the salesman's commission would be the remainder of the contract price above costs. For larger and more complicated jobs, costs would be estimated at the beginning and Builders would take 40 percent of the net profits and the salesman would receive the remaining 60 percent. The job officially began only when *68 the contract between Builders and the customer was executed, financing arranged, plans drawn and building permits obtained. As a daily record keeping system, Builders kept separate manila envelopes for each job in which all the bills and receipts were stored until the entire series of transactions could be entered in the general ledger at the completion of the job. Builders maintained a manila envelope for every job occurring during the year in issue including each of petitioner's jobs. Builder's records indicated that during 1979 petitioner supervised the following jobs: Name of Customer
Starting Date
Shields
August 10, 1978
Mays
November 5, 1978
Hughes
February 15, 1979
Lewis
August 19, 1979
Jakes
May 23, 1979
Builders' records for 1979 did not include jobs for customers named Robinson, Howard or Boutin. Petitioner's daily activity consisted primarily of visiting job sites to oversee the performance of the various subcontractors. As he went around the sites, petitioner kept a notebook in which he recorded cash payments that he made with respect to the jobs. The entries in the notebook typically *69 included only payee's name and amount of the payment and were often countersigned by the payee. Most of the entries were dated, and some of the entries indicated to which job the payment was related. Petitioner made the entries in the notebook primarily so that he could subsequently prove to the payee that the cash payment had been made. At trial, petitioner was unable to remember specifically to which subcontracting services and which of Builders' jobs each of the entries in the notebook pertained. However, he did remember most of the people whose names were contained in the entries and was able to guess why the payment would have been made. The majority of the names entered in the notebook belonged to subcontractors or laborers who performed the subcontracted jobs on Builders' projects. If the work had not been done correctly petitioner paid the subcontractor to redo or repair it. Some of the names belonged to customers who had been unhappy with an aspect of the job and received cash payments from petitioner to alleviate their dissatisfaction. Some of the names belonged to customers or associates who had given petitioner tips or leads to new customers. If the lead produced *70 a job for Builders, petitioner paid a small percentage of his estimated profit to the tip provider. In addition to the notebook of receipts, petitioner produced several canceled checks which did not contain any explanatory notation. In 1979, petitioner purchased a new Lincoln automobile which he used to drive to and from work and between job sites. On February 12, 1979, petitioner made a down payment of $ 2,827.84 towards the total purchase price of $ 15,522.64 which included $ 878.64 in sales tax and purchased additional warranty protection for $ 285. With respect to the Lincoln, petitioner claimed deductions on his 1979 income tax return for depreciation, interest expenses, sales tax and repairs. Petitioner also produced credit card statements and summaries showing total gas expenses of $ 1,831.42 and explained that all the credit card use was related to business. Petitioner's joint tax return was prepared by an accountant whose name petitioner could not remember. Petitioner did not review the return after receiving it from his accountant. Respondent disallowed the following business expense deductions which petitioner claimed on his 1979 tax return: Expense
Amount
Contract Laborers
$ 20,000
Canvancers [3]
3,000
Travel and Entertainment
3,766
Out of State Travel
3,394
Automobile
Expenses
3,333
Depreciation
3,600
Repairs
6,000
Gas, Oil, Tires
2,487
Sales Tax
1,081
TOTAL
$ 46,661
*71 OPINION The first issue for our consideration is whether petitioner properly claimed business expense deductions for amounts expended to contract laborers and customers, for business leads and for costs associated with the purchase and maintenance of the Lincoln automobile. The burden of proving that such deductions were properly claimed rests with petitioner. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Furthermore, deductions are a matter of legislative grace and each statutory requirement must be satisfied before the deduction can be allowed. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Section 162 allows a deduction for reasonable business expenses which are both ordinary and necessary. Deductible business expenses include "ordinary and necessary expenditures directly connected with or pertaining to the *72 taxpayer's trade or business." Sec. 1.162-1(a), Income Tax Regs. Whether an expense is ordinary and necessary is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Walliser v. Commissioner,72 T.C. 433, 437 (1979). "Ordinary" has been interpreted to mean that an expense must have a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962). "Necessary" has been interpreted to mean that the expense must be "appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Heininger, supra at 471; Carbine v. Commissioner,83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Where an expenditure is, by its nature, ordinary and necessary, but is unreasonable in amount, only the reasonable portion qualifies for a deduction under section 162. United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967). *73 The bulk of the business expenses for which petitioner claimed deductions consists of purported payments to subcontractors and laborers for work done on Builders' jobs. We conclude that petitioner has failed to meet his burden of proving that the payments were associated with the completion of the Builders' jobs and were ordinary and necessary within the meaning of section 162. At trial, petitioner could not remember the exact subcontracted service that each payment represented, although he could guess what the service probably would have been and for which of Builders' jobs the subcontracted service probably would have been performed. However, petitioner's reconstruction of events was erroneous in many ways. Petitioner indicated that subcontracted services were performed for customers named Howard, Boutin and Robinson, none of whom were contained in Builders' records for 1979. In his testimony, petitioner allocated some subcontracting costs to jobs which had not been started at the time the payment was made as well as to jobs from 1978 and 1980. In short, petitioner's memory of the events surrounding the payment is insufficient to fill in the gaps left by the sketchy records *74 contained in his notebook entries. The entries in the notebook do not include enough information to support a finding that each payment was related to petitioner's business activity and his testimony at trial could not adequately supplement the entries. Furthermore, it was Builders' clearly stated policy to pay this type of expense. According to petitioner's testimony all of the payments pertained to finishing Builders' jobs to the satisfaction of the customer, an operating cost that Builders would have paid. In order to be deductible, business expenses generally must be the expenses of the taxpayer claiming the deduction. Hewett v. Commissioner,47 T.C. 483, 488 (1967). The payment by one taxpayer of the obligation of another is not generally considered an ordinary and necessary expense. Reading Co. v. Commissioner,132 F.2d 306, 311 (3d Cir. 1942). An exception to this rule exists where a taxpayer expends his own funds in order to protect or promote his own established business for a cost which would be an ordinary and necessary expense of his business. *75 Lohrke v. Commissioner,48 T.C. 679, 684-685 (1967). Because Builders' policy was to willingly assume the costs of finishing the contracted jobs, mistakes and oversights were anticipated. Thus, it is unlikely that petitioner's job would have been jeopardized by the existence of such costs on jobs which he supervised. Petitioner was not compelled to make payments to subcontractors, but alleged in his testimony that he chose to cover those costs himself, and we cannot conclude that his alleged payments, if actually made, complied with ordinary and necessary business practices. Another portion of costs which petitioner deducted as business expenses represented payments made for tips or leads to new customers. These costs would not have been paid by Builders. However, petitioner failed to establish that these alleged payments, if actually made, in any way contributed to his securing new contacts. There was no evidence that any of the alleged recipients of these payments gave petitioner information about new customers because of the possibility of financial reward. Petitioner failed to establish if such alleged commission payments are customary in the industry. *76 Furthermore, petitioner only established that one of the tip providers even knew they would receive a reward. Hy Dabbs received total commission payments of $ 4,200 after an initial payment of $ 2,000. Therefore, with the exception of the payments of $ 4,200 to Hy Dabbs, we cannot conclude that these payments constitute ordinary and necessary business expenses because petitioner failed to show a proximate and causal relationship between the payments and securing new business contacts. Petitioners also claimed deductions for business related travel and entertainment expenses in the amount of $ 3,766 and for canvancers in the amount of $ 3,000. A taxpayer has to adequately substantiate expenses pertaining to travel and entertainment expenses. Sec. 274. Petitioners failed to offer any documentation or explanation for either the travel and entertainment expenses or the canvancers expenses. Thus, we conclude that petitioners are not entitled to deduct those expenses. The third group of expenses for which petitioners claimed deductions were the costs of purchasing and maintaining the *77 Lincoln automobile. In order to properly claim a deduction for depreciation with respect to an automobile, a taxpayer must establish that the automobile was used at least partially for business and the deduction will be allowed only to the extent of business use. Sec. 167(a); Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 744 (1973). The proportion of the use which is personal use is a question of fact. International Artists, Ltd. v. Commissioner,55 T.C. 94, 105 (1970). Petitioner testified credibly that the Lincoln was used exclusively for business except for his daily round trip to and from work. He further testified that his daily commute was eight miles each way. However, petitioner did not establish how many miles were dedicated to business use. Where, as here, a taxpayer establishes that he is entitled to a deduction but is unable to establish the precise amount of the deduction, the Court will apply its own best judgment to make an approximation as best it can, bearing heavily upon the taxpayer, whose inexact records create the present confusion. *78 Durkin v. Commissioner,87 T.C. 1329, 1397 (1986) interpreting Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Because the bulk of petitioner's use of the Lincoln was devoted to business use, we conclude that 25 percent was personal and 75 percent was business. Therefore, petitioner's deduction for depreciation must be reduced by 25 percent. In addition to a deduction for depreciation petitioner also claimed deductions for various expenses associated with the maintenance of the Lincoln. In order to be deductible these expenses must constitute ordinary and necessary business expenses within the meaning of section 162(a). Petitioner testified credibly that the Lincoln was never used for personal activities, except commuting, and that all the gasoline credit card expenditures were associated with the Lincoln. Petitioner also submitted receipts and invoices establishing expenditures of $ 2,045.70 for gas, oil and tires for the Lincoln, and $ 1,551.31 for various maintenance repairs. We conclude that petitioner is entitled to deduct an amount equal to *79 75 percent of the sum of these expenses, reflecting the amount of business use. Furthermore, petitioner overstated the amount of sales tax on the purchase of the Lincoln and the correct figure is $ 878.64 and is fully deductible. Finally, petitioner claimed deductions for out-of-state travel in the amount of $ 3,394, but failed to introduce any evidence or offer any substantiation. See section 274. We hold that petitioner is not entitled to such a deduction. The second issue for our consideration is whether petitioners are liable for an addition to tax under section 6653(a). Section 6653(a) provides for an addition to tax if any part of the underpayment of tax is attributable to negligent or intentional disregard of the rules or regulations. Petitioners bear the burden of proving that respondent's determinations should not be sustained. Hall v. Commissioner,729 F.2d 632 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Hanson v. Commissioner,696 F.2d 1232, 1234 (9th Cir. 1982), affg. a Memorandum Opinion of this Court; Luman v. Commissioner,79 T.C. 846, 860-861 (1982). *80 Negligence under section 6653(a) is defined as lack of care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioners have a duty to maintain records "as the Secretary deems sufficient to show whether or not such person is liable for tax * * * ." Sec. 6001. We conclude that petitioner was negligent in failing to find out whether the expenses were properly deductible. Although petitioner did not explain why he failed to report his expenses to Builders, there is no indication in the record that he attempted to find out whether such expenditures would actually be deductible as business expenses. Although petitioner employed an accountant to prepare his tax return he testified that he merely handed over his records and never consulted her about whether the expenses were actually deductible. Petitioner's records were incomplete and he was unable to reconstruct the time and nature of the subcontracted jobs from the entries in the notebook. Furthermore, petitioner claimed deductions, in large part, for expenses he was not required to pay. There is no indication in the *81 record that petitioner behaved in a reasonable and prudent manner and we uphold respondent's determinations of the addition to tax. In light of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. After a hearing before this Court, we concluded that petitioner's books and records had not been subject to a second inspection within the meaning of section 7605(b) and denied as ill-founded petitioner's motion to shift the burden of going forward because the statutory notice was arbitrary and carpricous. See Ramsey v. Commissioner,T.C. Memo. 1986-252↩.
3. The term canvancers was never defined by the parties nor is its meaning found in Webster's New College Dictionary.↩