T.C. Memo. 2017-38

UNITED STATES TAX COURT

GARY J. KAUFFMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23502-12.                    Filed February 22, 2017.

Gary J. Kauffman, pro se.

Kimberly A. Daigle, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent issued a notice of deficiency determining a

$52,680 deficiency in petitioner's 2008 Federal income tax and an accuracy-

[*2] related penalty under section 6662(a) of $11,592.80.[1]  After concessions,[2] the remaining issues for decision are whether petitioner:  (1) is entitled to a deduction for certain expenses paid from a disregarded entity to a controlled corporation; (2) is entitled to a mortgage interest deduction in excess of the amount respondent allowed; and (3) is liable for a section 6662(a) accuracy-related penalty.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.  At the time the petition was timely filed, petitioner resided in Montana.

During the year at issue petitioner was a realtor and cinematographer. Petitioner operated his business through several LLCs and a solely owned C corporation.  The LLCs were reported on petitioner's Form 1040, U.S. Individual Income Tax Return, as disregarded entities, and the C corporation filed its own return.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent concedes that petitioner is entitled to deduct $75,000 in costs of sales on his Schedule C, Profit or Loss From Business, for Rocky Mountain Habitats, LLC.  Other concessions are discussed in the body of this opinion.

**[\*3]** Consulting Fees and Commission Expenses

One of petitioner's LLCs, Rocky Mountain Habitats, LLC (RMH), reported paying Rocky Mountain Habitats, Inc. (corporation), $191,000 in "consulting fees" and $75,000 in "commissions and fees".  These expenses were actually rental expenses--RMH allegedly rented and used a sophisticated camera that was owned by the corporation.

Petitioner claimed a deduction for these expenses on his Form 1040 Schedule C for RMH, and the corporation included the corresponding amounts in income on its Form 1120, U.S. Corporation Income Tax Return.  Respondent disallowed RMH's claimed deduction for consulting fees and commissions in the notice of deficiency.  The record also shows that respondent made a corresponding adjustment to the corporation's income, reducing it by $266,000 ($191,000 plus $75,000).

Interest Expense

Petitioner owned two homes during the year at issue.  Petitioner's primary home was in West Glacier, Montana, and his second home was in San Diego, California.  Petitioner deducted interest expenses arising from loans secured by both homes.

[*4] Petitioner purchased the West Glacier property in 2003 for $225,143, financing the purchase with a single loan. In October 2004 petitioner paid off the first loan with a $326,500 loan from Countrywide. The balance on the first loan at the time it was refinanced was $171,677.10. Two months later petitioner received a home equity line of credit from Wells Fargo for $100,000. Both the Countrywide loan and the Wells Fargo loan were secured by the West Glacier property.

Petitioner purchased the San Diego property in 1999 for $350,000, financing the purchase with loans of $280,000 and $35,000. Both loans were secured by the San Diego property. In 2002 petitioner refinanced the two loans with a single loan from Washington Mutual (now JP Morgan Chase) which was also secured by the San Diego property. The balances on the loans at the time they were refinanced were $273,108 and $34,138.50.

Petitioner deducted $16,381 of interest expenses related to the Countrywide loan and the Wells Fargo loan (the loans secured by the West Glacier Property) on his Form 1040 Schedule C for RMH. Respondent disallowed $16,261 of the interest expense deduction on the Schedule C but reallocated $7,274.51 of that amount to petitioner's Schedule A, Itemized Deductions, as deductible mortgage

[*5] interest.[3] At trial respondent conceded that petitioner could deduct an additional $2,490 on his Schedule A as mortgage interest. Respondent maintains that the remaining $6,496.49 ($16,261 minus $7,274.51 and $2,490) is nondeductible.

Petitioner timely filed a petition with this Court seeking redetermination.

OPINION

I.    Burden of Proof

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a) shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if the taxpayer meets certain conditions. Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). Petitioner has not shown that he satisfied the requirements of section 7491(a) to shift the burden of proof to respondent. Accordingly, petitioner bears the burden of proof. See Rule 142(a).

---

[3] Petitioner also deducted interest expenses attributable to the JP Morgan Chase loan related to the San Diego property on his return, but none of it was disallowed by respondent.

**[*6]** II.      <u>Consulting Fees and Commission Expenses</u>

Petitioner argues he is entitled to deduct $266,000 in consulting fees and commission expenses (which should have been more appropriately labeled "camera rental expenses") because they were ordinary and necessary business expenses of RMH.[4]  Respondent argues that petitioner failed to prove that the expenses were ordinary and necessary business expenses.  We agree with respondent.

Taxpayers are allowed a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business.  Sec. 162(a).  Whether an expenditure is ordinary and necessary is usually a question of fact.  <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943).  Generally, for an expenditure to be an ordinary and necessary business expense, the taxpayer must show a bona fide business purpose for the expenditure; there must be a proximate relationship between the expenditure and the business of the taxpayer.  <u>Challenge Mfg. Co. v. Commissioner</u>, 37 T.C. 650, 659-660 (1962); <u>Henry v. Commissioner</u>, 36 T.C. 879, 884 (1961); sec. 1.162-1(a), Income Tax Regs.  To be "necessary" within the

---

[4]  Petitioner changed course at trial and argued that the reported expenses were actually intercompany loans deductible as bad debt losses.  However, petitioner abandoned this argument on brief and reiterated that the expenses were ordinary and necessary business expenses.

**[\*7]** meaning of section 162, an expense needs to be "appropriate and helpful" to the taxpayer's business.  Welch v. Helvering, 290 U.S. at 113.  The requirement that an expense be "ordinary" connotes that "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved."  Deputy v. du Pont, 308 U.S. 488, 495 (1940) (citing Welch v. Helvering, 290 U.S. at 114).

Even if an expense is ordinary and necessary, it is deductible under section 162 only to the extent it is reasonable in amount.  United States v. Haskel Eng'g & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967); Gill v. Commissioner, T.C. Memo. 1994-92, aff'd without published opinion, 76 F.3d 378 (6th Cir. 1996); Brallier v. Commissioner, T.C. Memo. 1986-42.  The element of reasonableness is inherent in the phrase "ordinary and necessary" in section 162.  Haskel Eng'g & Supply Co., 380 F.2d at 788-789.

While petitioner explains on brief that the expenses were ordinary and necessary business expenses, he does not cite any credible testimony or other relevant evidence in the record supporting his assertion.  The only evidence petitioner provided was accounting records and bank statements.  However, these items merely reflect expenses allegedly incurred by RMH; the accounting records and bank statements do not show why the alleged expenses are ordinary and

**[*8]** necessary.  We also note that petitioner did not testify or offer other evidence explaining how the expenses were calculated or whether the corporation charged third parties the same amounts for similar services.  Therefore, we are unable to determine whether the expenses were reasonable in amount.  Consequently, on the basis of the record before us, we cannot find that the expenses were ordinary and necessary business expenses.  We therefore sustain respondent's determination on this issue.

III.    Interest Expenses

We next address the extent to which petitioner is entitled to deductions for interest expenses.

Taxpayers are generally allowed to deduct all interest paid or accrued within the taxable year on indebtedness.  Sec. 163(a).  But in the case of a taxpayer other than a corporation, no deduction is allowed for personal interest.  Sec. 163(h)(1).  "Personal interest" includes any interest allowable as a deduction other than any qualified residence interest.  Sec. 163(h)(2)(D).  "[Q]ualified residence interest" means any interest that is paid or accrued during the taxable year on acquisition

[*9] indebtedness[5] or home equity indebtedness[6] with respect to any qualified residence of the taxpayer. Sec. 163(h)(3)(A). A taxpayer may have up to two qualified residences. See sec. 163(h)(4)(A)(i).

Petitioner was liable in 2008 on three loans which were secured by his two qualified residences. Respondent did not challenge the interest deduction arising from the JP Morgan Chase loan securing the San Diego property and does not assert that any portion of that loan is home equity indebtedness. Respondent does, however, challenge a portion of the interest deduction attributable to the Countrywide and Wells Fargo loans securing the West Glacier property. Respondent argues that the $326,500 Countrywide loan consists of $171,677.10 in

---

[5] "[A]cquisition indebtedness" means any indebtedness that is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer and is secured by the residence. Sec. 163(h)(3)(B)(i). Acquisition indebtedness also includes any indebtedness secured by the residence resulting from the refinancing of acquisition indebtedness but only to the extent the amount of the indebtedness resulting from the refinancing does not exceed the amount of the refinanced indebtedness. Id. And the aggregate amount treated as acquisition indebtedness for any period must not exceed $1 million. Sec. 163(h)(3)(B)(ii).

[6] "[H]ome equity indebtedness" means any indebtedness (other than acquisition indebtedness) secured by a qualified residence to the extent the aggregate amount of the indebtedness does not exceed the fair market value of the qualified residence reduced by the amount of acquisition indebtedness with respect to the residence. Sec. 163(h)(3)(C)(i). And the aggregate amount treated as home equity indebtedness for any period must not exceed $100,000. Sec. 163(h)(3)(C)(ii).

**[*10]** qualified home acquisition indebtedness and that the remaining $154,822.90 balance of the loan is home equity indebtedness. Respondent also asserts that the entire $100,000 Wells Fargo loan is home equity indebtedness. Under that premise, respondent argues that the disallowed interest deduction should be sustained because petitioner's total home equity indebtedness during the year at issue was $254,822.90, which exceeds the $100,000 home equity indebtedness limit in section 163(h)(3)(C)(ii).

Petitioner argues that the entire amount of the Countrywide loan consists of home acquisition indebtedness. Petitioner maintains that he purchased the West Glacier property with a $225,143 loan and began financing over $150,000 in improvements to the property by using credit cards. The record shows that petitioner later refinanced the first loan (which then had a balance of $171,677.10) with a new loan of $326,500 from Countrywide. The Countrywide loan was clearly used to pay off the first loan, but the record shows that the balance of the loan was distributed to petitioner in his individual capacity. This is not fatal, and in fact, the remaining balance of the loan distributed to petitioner could be considered acquisition indebtedness if he were able to prove that he did actually incur expenses to improve the qualified residence during the 24 months before the date the house was complete and that the Countrywide loan was secured within 90

**[*11]** days of the completion of construction.  See Notice 88-74, Example 1, 1988-2 C.B. 385, 386.

Petitioner, however, did not produce credible evidence showing that expenses were incurred to improve the property.  Petitioner's only evidence offered in support of his argument is his uncorroborated accounting records.  In the absence of the actual credit card statements, bank records, receipts, or other documents showing that he incurred improvement expenditures, we find petitioner's uncorroborated accounting records insufficient and we sustain respondent's determination that petitioner is limited to $171,677.10 in home acquisition indebtedness on the Countrywide loan.  We also find that the interest attributable to the home equity portion of the Countrywide loan and the interest attributable to the Wells Fargo loan are subject to the $100,000 limit provided by section 163(h)(3)(C)(ii).

IV.   Accuracy-Related Penalty

We next determine whether petitioner is liable for an accuracy-related penalty.  Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20% on the portion of an underpayment of tax due to: (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.  "Negligence" is defined as any failure to make a

[*12] reasonable attempt to comply with the provisions of the Code; this includes a failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  "Disregard" means any careless, reckless, or intentional disregard.  Sec. 6662(c).  "Understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate.  Sec. 6662(d)(2)(A).  A "substantial understatement" of income tax is defined as an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows that there was reasonable cause and that he or she acted in good faith.  See sec. 6664(c)(1).  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate

**[\*13]** reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.  Reliance on a tax professional demonstrates reasonable cause when a taxpayer (1) selects a competent tax adviser, (2) supplies the adviser with all relevant information, and (3) relies in good faith on the adviser's professional judgment.  See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447.  Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had reasonable cause or substantial authority for the position.  See Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent satisfied his burden of production in establishing the appropriateness of the penalty.  Petitioner did not maintain sufficient records to substantiate most of the expenses underlying his deductions, and the disallowed

[*14] deductions in this case are directly attributable to petitioner's failure to maintain adequate records. Furthermore, petitioner has not proven he had reasonable cause for his return positions and his failure to maintain adequate business records. Although petitioner argues he relied on a return preparer, there is no evidence in the record that his return preparer was provided all relevant information. Petitioner testified that he provided his return preparer with his accounting records (which we find unreliable), but the record does not show that he provided his return preparer with the supporting evidence (or that the supporting evidence ever existed). It is also unclear from the record whether petitioner adequately explained the nature of the transactions his related business entities were purportedly engaged in (i.e., that "consulting fees" and "commissions and fees" were actually camera rental expenses). We therefore hold that petitioner is liable for a section 6662(a) accuracy-related penalty on the ground of negligence.[7]

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

---

[7] In the event the Rule 155 computations demonstrate that petitioner's understatement of income tax for the year at issue exceeds the greater of $5,000 or 10% of the amount of tax required to be shown on the return, we conclude that the underpayment for the year will also be attributable to a substantial understatement of income tax for which petitioner has not shown reasonable cause.

**[\*15]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.