T.C. Memo. 2011-236

UNITED STATES TAX COURT

DANIEL E. AND MARILYN J. FUHRMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21786-08.                    Filed September 29, 2011.

<u>Nicholas I. Andersen</u> and <u>Michael J. Zaino</u>, for petitioners.

<u>Edward Lee Walter</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined deficiencies of
$27,917 and $25,534 in petitioners' 2004 and 2005 Federal income
taxes, respectively, and section 6662(a) accuracy-related
penalties of $5,583 and $5,107 for 2004 and 2005, respectively.[1]

---

[1]All section references are to the Internal Revenue Code in
(continued...)

After concessions by petitioners, the issues for decision are: (1) Whether petitioners may deduct, in amounts greater than respondent has allowed, purported management fees that petitioner Daniel Fuhrman's (petitioner) single-member LLC paid to his wholly owned C corporation, and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty for each year at issue.

FINDINGS OF FACT

The parties have stipulated some facts. When they filed their petition, petitioners resided in Ohio.

During the years at issue petitioner owned a trucking business. For liability and other business reasons, he had organized this business into five wholly owned corporations, including Top Line Express, Inc. (Top Line), and Top Leasing, Inc. (Top Leasing), as well as a limited liability company, Grasshopper Leasing, L.L.C. (Grasshopper), of which he was the sole member.

Grasshopper owned about 30 trucks. Its sole business was leasing these trucks to affiliated entities, mainly Top Line. Top Line used the trucks in its business of hauling goods, primarily auto parts.

---

[1](...continued)
effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

Top Line employed all the business office personnel for petitioner's trucking business. During the years at issue Top Line had 18 to 20 employees, including petitioner. Top Leasing employed all the truck drivers in petitioner's trucking business.

Grasshopper had no employees. Top Line's employees performed management and administrative services for Grasshopper. But there was no written contract with respect to these services. Moreover, Top Line maintained no contemporaneous time records for the services its employees provided Grasshopper. During 2004 and 2005 Top Line billed Grasshopper, generally a flat $9,000 per month, for management services that it allegedly performed for Grasshopper.[2] In 2004 and 2005 Grasshopper paid Top Line $101,382 and $108,000, respectively, with respect to these invoices.[3]

On their joint Federal income tax returns, petitioners reported income tax liabilities of $69,196 for 2004 and $114,869 for 2005. On Schedules C, Profit or Loss From Business (Sole Proprietorship), in reporting their passthrough net business income from Grasshopper, petitioners claimed "Other expenses" of $103,645 for 2004 and $115,168 for 2005. These "Other expenses"

[2]For January and February 2004, the combined management fee was $17,000.

[3]It is unclear from the record why Grasshopper's payments in 2004 fell short of the total $107,000 that Top Line had invoiced.

reflected primarily the purported management fees that Grasshopper paid Top Line.[4]

In the notice of deficiency respondent disallowed $57,052 of these Schedule C "Other expenses" for 2004 and disallowed $63,660 for 2005.[5] The notice of deficiency explains that these amounts were disallowed because petitioners had not established that these amounts were paid for ordinary and necessary business expenses.

OPINION

I. Ordinary and Necessary Business Expenses

The principal issue is whether in computing Grasshopper's net business income petitioners are entitled to deduct, in amounts greater than respondent has allowed, purported management fees that Grasshopper paid to Top Line.

The taxpayer generally bears the burden of proving the Commissioner's determinations erroneous. Rule 142(a). In particular, the taxpayer bears the burden of substantiating the

---

[4]These "Other expenses" also included relatively small amounts for general supplies, professional fees, and miscellaneous expenses.

[5]The notice of deficiency does not indicate which portion of the disallowed "Other expenses" relates to management fees as opposed to other items. On brief petitioners represent that the entire amount of disallowed "Other expenses" relates to the claimed management fees, and they do not make any argument with respect to other items of "Other expenses". We deem petitioners to have waived or conceded any argument with respect to these other amounts.

amount and purpose of each item claimed as a deduction.  See
Higbee v. Commissioner, 116 T.C. 438, 440 (2001); Hradesky v.
Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d
821 (5th Cir. 1976).

Section 7491(a)(1) provides that if, in any court
proceeding, a taxpayer introduces credible evidence with respect
to any factual issue relevant to ascertaining the taxpayer's
proper tax liability, the Commissioner shall have the burden of
proof with respect to that issue.  Credible evidence is evidence
the Court would find sufficient upon which to base a decision on
the issue in the taxpayer's favor, absent any contrary evidence.
See Higbee v. Commissioner, supra at 442.  Section 7491(a)(1)
applies, however, only if the taxpayer complies with all
substantiation and recordkeeping requirements under the Code.
Sec. 7491(a)(2)(A) and (B).

On brief petitioners contend that by allowing them to deduct
a substantial portion of the management fees, respondent has
acknowledged that they have met their substantiation burden.  As
discussed below, however, petitioners have failed to introduce
credible evidence to show that the disallowed expenses represent
ordinary and necessary business expenses of Grasshopper.  The
burden of proof as to this issue remains with petitioners.

Section 162(a) allows as a deduction all the ordinary and
necessary expenses paid or incurred during the taxable year in

carrying on any trade or business.  Whether an expenditure is ordinary and necessary is generally a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.  See Commissioner v. Heininger, supra at 471.  The Court of Appeals for the Sixth Circuit, to which any appeal of this case would lie, has held that for expenses to be deductible as ordinary and necessary, they must be reasonable, because "the element of reasonableness is inherent in the phrase 'ordinary and necessary'".  Commissioner v. Lincoln Elec. Co., 176 F.2d 815, 817 (6th Cir. 1949), revg. a Memorandum Opinion of this Court. Only the portion of an expense that is reasonable qualifies for deduction under section 162(a).  United States v. Haskel Engg. & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967).

The reasonableness concept has particular significance in determining whether payments between related parties, such as commonly controlled business entities, represent ordinary and necessary expenses.  See Bittker & Lokken, Federal Taxation of Income, Estates, and Gifts, par. 20.1.5, at 20-18 (3d ed. 1999). For instance, in ASAT, Inc. v. Commissioner, 108 T.C. 147, 174-

175 (1997), this Court held that the taxpayer was not entitled to deduct consulting fees it paid to its subsidiary where the taxpayer did not establish how the fees were determined, there was no written contract, the invoices provided almost no detail, and there was no evidence of the service provider's skills that might warrant the consulting fees. See also Weekend Warrior Trailers, Inc. v. Commissioner, T.C. Memo. 2011-105 (holding that the taxpayer's wholly owned S corporation was not entitled to deduct management fees paid to another of his wholly owned S corporations where the evidence did not adequately establish the specific services performed and who performed them).

Similarly, petitioners have failed to demonstrate how the management fees in question were determined. They have presented no contemporaneous documentation.[6] The monthly invoices from Top Line to Grasshopper generally consist of a single line item showing a flat $9,000 "Management Fee" with no detail as to the services provided or the derivation of the invoiced amount. There was no written contract for the management fees. We question whether these amounts were determined at arm's length, since petitioner was the sole owner of both Grasshopper Leasing and Top Line Express.

---

[6]Although petitioners' C.P.A. testified that "the company continued to have documentation in their files" and that "Schedules were prepared on an ongoing basis to support those expenses", no such documentation appears in the record.

Attempting to substantiate the disallowed expenses, petitioners rely primarily on petitioner's testimony. Petitioner testified that seven of Top Line's employees performed services for Grasshopper, aggregating 100 to 110 hours each month.[7] According to petitioner's testimony, the management fees were attributable to these four categories of services: (1) Consulting--8 to 10 hours per month, provided by petitioner; (2) accounting--18 to 22 hours per month provided by two of Top Line's accounting personnel;[8] (3) sales management--24 to 28 hours per month, provided by one of Top Line's employees who, according to petitioner's testimony, would "sell to the various

---

[7]Petitioners also offered into evidence a document (the noncontemporaneous analysis) that their accountants prepared during the course of the IRS audit. This document purports to analyze, in hindsight, the management fees that Grasshopper paid Top Line and suggests that Top Line's actual monthly management costs were somewhat higher than the amounts it charged Grasshopper. In notable respects, this document varies from petitioner's testimony. For instance, the noncontemporaneous analysis indicates that Top Line employees spent 83.75 hours per month performing services for Grasshopper, rather than the larger number indicated by petitioner's testimony. For a specific example of this type of discrepancy, see infra note 8. Also, the makeup of the management costs as accounted for in the noncontemporaneous analysis differs significantly from that suggested by petitioner's testimony. On brief petitioners do not directly rely on the noncontemporaneous analysis to substantiate the disputed expenses. Nevertheless, the unexplained discrepancies between the noncontemporaneous analysis and petitioner's testimony call into question the reliability of his testimony.

[8]By contrast, the noncontemporaneous analysis indicates that Top Line employees spent a total of 7.6 hours per month performing bookkeeping services and financial preparation management for Grasshopper.

customers to make sure that these leased trucks were used and we were able to pay the lease through Grasshopper"; and (4) safety and driver relations--about 50 hours per month, provided by three Top Line employees who performed tasks such as recruiting, training, testing, tracking, and dispatching truck drivers.

According to petitioner's testimony, then, over half the hours allegedly worked by Top Line employees on behalf of Grasshopper consisted of services in the categories of sales management, safety, and driver relations. Petitioners have not convinced us that it was necessary for Grasshopper to incur expenses for such services. After all, Grasshopper's business consisted of leasing trucks to other entities, mainly Top Line, that petitioner owned. The sales management services, as described by petitioner, appear to be services that Top Line would have performed on its own behalf in maintaining its own customer base, since Grasshopper had no customers other than Top Line and other related entities.[9] Moreover, the record establishes no reason why Grasshopper would have had any need to recruit, train, test, track, or dispatch truck drivers, since it

_____

[9]Acknowledging that "Grasshopper leases exclusively to affiliated entities", the noncontemporaneous analysis indicates that substantial components of the management fee represent a "cost assigned to the benefit of not having to market the equipment for lease to outside parties and to the benefit of always having 100% of the fleet under lease at all times." We are not persuaded that the benefit of not incurring certain types of expenses is properly assignable as an ordinary and necessary expense.

employed no drivers. In addition, we are not convinced that consulting services that petitioner allegedly provided to Grasshopper were performed in his capacity as an employee of Top Line rather than in his individual capacity as sole owner of Grasshopper. Indeed, because Grasshopper had no other owners and no employees, it is not apparent with whom at Grasshopper petitioner might have consulted, other than himself.

Petitioners have not established that any amounts of management fees greater than those respondent has allowed represent ordinary and necessary expenses of Grasshopper.[10]

## II. Section 6662(a) Accuracy-Related Penalty

Respondent determined that for each year at issue petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) and (b)(2) for a substantial understatement of income tax. Section 6662(a) and (b)(2) imposes a 20-percent accuracy-related penalty on any portion of a tax underpayment that is attributable to any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.

---

[10]In the light of this holding, we need not and do not address respondent's argument, raised for the first time on brief, that respondent's disallowance of portions of the management fee deductions reflects a proper allocation under sec. 482.

Respondent bears the burden of production with respect to this penalty. Sec. 7491(c). To meet this burden, respondent must produce evidence establishing that it is appropriate to impose this penalty. Once respondent has done so, the burden of proof is upon petitioners to show that they acted with reasonable cause and in good faith. See Higbee v. Commissioner, 116 T.C. at 449.

We have sustained respondent's determination that petitioners have deficiencies of $27,917 for 2004 and $25,534 for 2005. Adding these amounts to the total tax shown on petitioners' returns, the tax required to be shown on their returns was $97,113 for 2004 and $140,403 for 2005. The understatements therefore exceed the greater of 10 percent of the tax required to be shown on the return ($9,711 for 2004 and $14,040 for 2005) or $5,000 and constitute substantial understatements of income tax within the meaning of section 6662(d)(1)(A). Respondent has therefore met his burden of production.

The accuracy-related penalty does not apply with respect to any portion of an underpayment as to which the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). Petitioners have not established, or even expressly alleged, that they had reasonable cause or acted in good faith. Petitioners

are liable for the section 6662(a) accuracy-related penalty for each year at issue as respondent has determined.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.