T.C. Memo. 2013-139

UNITED STATES TAX COURT

WILEY M. ELICK AND SHARON ELICK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

WILEY M. ELICK DDS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 23767-10, 23768-10.          Filed June 3, 2013.

Joseph J. Dadich, for petitioners.

Steven Mitchell Roth, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge: Respondent determined deficiencies in petitioner Wiley
M. Elick DDS, Inc.'s (petitioner) and petitioners Dr. and Mrs. Wiley M. Elick's
(Elicks) Federal income tax. After concessions, we must decide four issues. The

**[*2]** first issue is whether petitioner's payments for purported management fees in 2005 and 2006 are deductible under section 162. We hold that they are not. Second, we must decide whether business losses the Elicks claimed for 2004, 2005 and 2006 (years at issue) are subject to the passive loss limitation under section 469.[1] We hold that they are. Third, we must decide whether petitioner and the Elicks are each liable for accuracy-related penalties under section 6662(a). We hold that they are. The fourth issue is whether the Elicks are liable for the late-filing addition to tax for 2006. We hold that they are.

## FINDINGS OF FACT

The parties have stipulated some facts. We incorporate the stipulation of facts and the accompanying exhibits by this reference. Petitioner's principal place of business was in Hanford, California when it filed the petition. The Elicks resided in California when they filed the petition.

## I. Dental Practice

Petitioner is a dental practice specializing in pediatric dentistry. The Elicks were petitioner's sole shareholders and board members. The Elicks were also each salaried employees for petitioner. Dr. Elick was a full-time dentist for petitioner.

---

[1] All section references are to the Internal Revenue Code (Code) for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[*3] Petitioner also employed Dalanda McGee as its bookkeeper and office manager. Petitioner paid Ms. McGee a salary and issued her Forms W-2, Wage and Tax Statement, for 2005 and 2006.

Dr. Elick also owned and operated Surgitek Outpatient Center, Inc. (Surgitek). Surgitek is a dental surgery facility adjacent to petitioner's facility.

II. The Management Agreement

Petitioner explored creating an employee benefit plan in 2002. A professional advised Dr. Elick to establish a company to manage petitioner's operations. A stock ownership plan benefiting petitioner's employees would purchase the company stock from Dr. Elick. The fees generated by management services would fund the employee benefit plan.

Dr. Elick set up the proposed structure with the professional's assistance. Dr. Elick became the sole owner of an existing corporation, SD Management Group, Inc. (SDG). SDG established an employee stock ownership plan (ESOP) to benefit petitioner's employees. The ESOP then purchased from Dr. Elick all of the SDG stock. Dr. Elick served as SDG's only officer and board member.

SDG then entered into an agreement to manage petitioner's operations (management agreement). SDG agreed to, among other things, produce annual capital, operating and cashflow budget plans; investigate and document in writing

[*4] customer complaints; develop policies and procedures; recruit, supervise and train petitioner's employees; perform fiscal services; and ensure regulatory compliance. Petitioner agreed in exchange to pay SDG management fees equal to between 1% and 25% of petitioner's monthly gross receipts. Petitioner was obligated to pay SDG within 20 days of each month's end. Dr. Elick executed the management agreement for both parties. Dr. Elick caused Surgitek to enter into a similar agreement with SDG.

SDG did not have any paid employees during 2005 and 2006. Dr. Elick entered into a written agreement to be a "co-employee" of petitioner and SDG (employment agreement). Dr. Elick executed the employment agreement on behalf of SDG and himself. It was SDG's only written employment contract in effect during 2005 and 2006.

III. Management of Petitioner's Operations

Dr. Elick practiced dentistry full time for petitioner during 2005 and 2006. Ms. McGee continued to work full time for petitioner and performed many functions that SDG was to provide. Third parties performed payroll services and compliance training during 2005 and 2006.

Petitioner paid SDG $430,000 for 2005 and $303,000 for 2006 (collectively, management fees). These amounts equaled 9.76% of petitioner's annual gross

[*5] receipts for 2005 and 9.98% for 2006. SDG never issued to petitioner monthly invoices. Dr. Elick determined the amount of management fees petitioner paid. Petitioner paid SDG at the fiscal year's end.

Surgitek paid SDG $20,000 in 2005. Surgitek did not compensate SDG in 2006. And no other entity paid SDG in 2005 or 2006.

## IV. Petitioner's Federal Income Tax Returns

A return preparer prepared, and petitioner filed, Forms 1120, U.S. Corporation Income Tax Return, for 2005 and 2006. Petitioner claimed business expense deductions for the management fees. Dr. Elick told the return preparer the amounts petitioner had paid SDG. The return preparer did not verify the accuracy of those numbers or review any documents confirming those amounts.

## V. The Elicks' Losses From Other Entities

The Elicks jointly filed Forms 1040, U.S. Individual Income Tax Return, for each of the years at issue. The Elicks filed their 2006 joint return in February 2008, after the filing deadline.

The Elicks reported ordinary business losses from St. Jon Aircraft LLC for the years at issue and from Willow Creek Farms LLC and Charity Properties LLC for 2005 and 2006 (collectively, claimed losses). The Elicks reported ordinary income from Surgitek for the years at issue.

**[*6]** VI. <u>Deficiency Notices, Petitions and the Elicks' Motion To Amend</u>

Respondent issued separate deficiency notices to petitioner and the Elicks. Respondent disallowed the management fee deductions petitioner claimed for 2005 and 2006. Respondent also determined against petitioner accuracy-related penalties under section 6662(a). Petitioner timely filed a petition with this Court.

Respondent disallowed the Elicks' claimed losses under section 469. Respondent determined against the Elicks accuracy-related penalties under section 6662(a) and the late-filing addition to tax under section 6651(a)(1) for 2006.

The Elicks timely filed a petition with this Court. The Elicks alleged that the claimed losses were not subject to passive loss limitations because they met the material participation requirements. The Elicks moved to amend their petition shortly before trial to allege Surgitek was a passive activity. They sought to offset the claimed losses against Surgitek's income. The Court denied the motion because it was untimely.

OPINION

We must decide whether petitioner demonstrated that the management fees were ordinary and necessary business expenses. We then consider whether the Elicks' claimed losses are subject to passive loss limitations. We then must

**[*7]** consider the accuracy-related penalties and addition to tax respondent imposed. We begin with the burden of proof.

## I. Burden of Proof

Petitioner bears the burden of proving that respondent's determination of the deficiencies set forth in the deficiency notice is incorrect. See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, the Commissioner's determination is normally presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

The burden of proof on factual issues may shift to the Commissioner, however, where the taxpayer complies with all requirements of section 7491(a). Neither petitioner nor the Elicks argue section 7491(a) shifts the burden of proof to respondent. And we find that neither petitioner nor the Elicks met the requirements for section 7491(a). Accordingly, petitioner and the Elicks each carry the burden of proof.

## II. Deduction for Management Fees

We now consider whether petitioner was entitled to deduct the management fees as a business expense under section 162.

**[\*8]**   A.  <u>Ordinary and Necessary</u>

Tax deductions are a matter of legislative grace, and taxpayers must satisfy the specific statutory requirements for the item claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  Generally, a taxpayer may deduct ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a).  Whether an expense satisfies section 162 is generally a question of fact.  <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943).

An expense is ordinary if it is customary or usual within a particular trade, business or industry or relates to a common or frequent transaction in the type of business involved.  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  A necessary expense is appropriate and helpful to the operation of the taxpayer's trade or business.  <u>See</u> <u>Commissioner v. Tellier</u>, 383 U.S. 687, 689 (1966); <u>Carbine v. Commissioner</u>, 83 T.C. 356, 363 (1984), <u>aff'd</u>, 777 F.2d 662 (11th Cir. 1985).

We have found management fees to be an ordinary and necessary expense in some circumstances.  <u>See, e.g.</u>, <u>Wy'East Color, Inc. v. Commissioner</u>, T.C. Memo. 1996-136.  Other times, we have not.  <u>See, e.g.</u>, <u>Fuhrman v. Commissioner</u>, T.C. Memo. 2011-236.  A taxpayer must demonstrate that management services were

[*9] actually rendered.  See sec. 1.162-7, Income Tax Regs.; see also ASAT, Inc. v. Commissioner, 108 T.C. 147, 174-175 (1997); Am. Sav. Bank v. Commissioner, 56 T.C. 828, 842-843 (1971); Weekend Warrior Trailers, Inc. v. Commissioner, T.C. Memo. 2011-105; Wy'East Color, Inc. v. Commissioner, T.C. Memo. 1996-136.  A necessary expense need not be absolutely essential.  United States v. Haskel Eng'g & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967).  It must be reasonable, however, in amount.  Id.  The reasonableness concept has particular significance in dealings between related parties.  Fuhrman v. Commissioner, T.C. Memo. 2011-236.

B.    Whether Management Fees Were Necessary

Respondent contends that the management fees were unnecessary because SDG did not provide any management services.  Petitioner argues that it demonstrated the management fees were necessary.  We agree with respondent.

Petitioner failed to show that SDG rendered any services.  In fact, petitioner offered no documentation reflecting that SDG performed any services for petitioner.  SDG agreed to provide various services that petitioner never demonstrated it received, e.g., annual budget, operating and marketing plans.  Further, petitioner acknowledged that third parties provided services SDG was to

**[\*10]** provide. In addition, petitioner never provided contemporaneous records corroborating it received any services.

Petitioner contends that the management agreement shows the services SDG purportedly provided. The management agreement, however, only indicates the services SDG agreed to perform. The management agreement does not demonstrate SDG performed any services benefiting petitioner. Petitioner never received monthly invoices the management agreement required. Nor did petitioner pay SDG monthly. The record reflects that petitioner and SDG disregarded most terms of the management agreement.

Petitioner contends Dr. Elick's and Ms. McGee's testimonies demonstrated each provided service on SDG's behalf. We disagree. Dr. Elick testified he was acting as a SDG employee when he directed Ms. McGee to manage all aspects of petitioner's operations. We need not accept a taxpayer's self-serving testimony when corroborative evidence is absent. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), aff'd without published opinion, 956 F.2d 1166 (9th Cir. 1992). And the characterization that Dr. Elick was a "co-employee" is inconsistent with his full-time employment as petitioner's dentist. SDG never compensated Dr. Elick, and there is no record of his duties or the hours he performed management services. Moreover, he did not

**[*11]** testify that he performed any other management service. Petitioner never corroborated that Dr. Elick performed services as a SDG employee.

Likewise, petitioner failed to establish Ms. McGee performed services as a SDG employee. Ms. McGee performed the same duties and functions before and during 2005 and 2006. There are again no records showing Ms. McGee performed any services as a SDG employee. Ms. McGee was paid only by petitioner during 2005 and 2006. We find that neither Dr. Elick nor Ms. McGee provided petitioner any services on behalf of SDG.

Petitioner contends that the management fees were reasonable because respondent stipulated (in its view) that Surgitek's fees paid to SDG were reasonable. Indeed, a stipulation may be treated as a conclusive admission. Rule 91(e). Petitioner argues that it is inconsistent to find some fees for similar service unreasonable while others reasonable. See Achiro v. Commissioner, 77 T.C. 881, 903 (1981). Respondent stipulated the amounts Surgitek paid SDG, not that they were reasonable. Even if respondent had conceded that those fees were reasonable, it does not relieve petitioner from demonstrating it received services. See id. at 903-904.

In sum, petitioner has not demonstrated that SDG provided any services. The record reflects that certain services were performed by petitioner's employees

**[\*12]** or third parties, not SDG. And petitioner did not show it received any other services that the management agreement obligated SDG to provide. Petitioner has not demonstrated that the management fees were necessary or reasonable. Petitioner demonstrated no correlation between the $733,000 in management fees, or nearly 10% of its gross annual revenue, and the services purportedly performed. Accordingly, we find that petitioner has not established that any management fees were necessary or reasonable. We sustain respondent's determination.

III. <u>Whether Claimed Losses Are Subject to Passive Loss Limitations</u>

We now consider respondent's determination that the Elicks' claimed losses were subject to the passive loss limitations. The deduction of passive activity losses is generally suspended. Sec. 469(a). A passive activity loss is the excess of the aggregate losses from all passive activities over the aggregate income from all passive activities for the taxable year. Sec. 469(d)(1). A passive activity includes the conduct of any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1).

Respondent determined that the claimed losses were subject to section 469's limitations. The Elicks alleged in the petition that they met the material participation requirements for the claimed losses. The Elicks now acknowledge that they did not actively participate in those activities. Rather, they contend that

**[*13]** they should have been permitted to offset the claimed losses against the Surgitek income. We disagree.

The Elicks reported income from Surgitek for the years at issue. The Elicks moved to amend the petition shortly before trial to allege that Surgitek was incorrectly characterized as an active activity and that the claimed losses should be offset against that income. Respondent argued that the proposed amendment was untimely and would be prejudicial. See Rule 41(a). We agreed with respondent. Accordingly, the Elicks are precluded from offsetting the claimed losses against the Surgitek income.

Consequently, the Elicks have not demonstrated they are entitled to the business losses under section 469. We therefore sustain respondent's determination.

## IV. Penalties and Addition to Tax

Respondent imposed accuracy-related penalties under section 6662(a) against petitioner and the Elicks. Respondent also imposed an addition to tax against the Elicks for late filing the return for 2006. We address each in turn.

### A. Accuracy-Related Penalties

We now consider the accuracy-related penalties under section 6662(a) that respondent determined against petitioner for 2005 and 2006 and against the Elicks

**[*14]** for the years at issue. A taxpayer is liable for an accuracy-related penalty on any part of an underpayment attributable to, among other things, negligence or a substantial understatement of income tax. Sec. 6662(b)(1) and (2). The Commissioner has the burden of production and must come forward with sufficient evidence that it is appropriate to impose a penalty with respect to the liability of any individual.[2] Sec. 7491(c); see Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). The taxpayer bears the burden of proof as to any defense to the accuracy-related penalty. Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446.

Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return that would seem to a reasonable and prudent person to be "too good to be true" under the circumstances. Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

---

[2]We note that sec. 7491(c) does not apply to corporate taxpayers. See NT, Inc. v. Commissioner, 126 T.C. 191, 195 (2006).

**[\*15]** A taxpayer is not liable for an accuracy-related penalty, however, if the taxpayer acted with reasonable cause and in good faith with respect to any portion of the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge, experience and education of the taxpayer, and the reliance on the advice of a professional. Sec. 1.6664-4(b)(1), Income Tax Regs.

### 1. Petitioner

Respondent argues petitioner did not make a reasonable attempt to comply with the Code. We agree. Petitioner did not provide any credible evidence that it received services yet claimed $733,000 in expenses for management fees. Nor did petitioner show that it respected the terms of the management agreement. Petitioner did not therefore act with ordinary and reasonable care.

Petitioner argues that the reasonable cause exception applies. It suggests that it relied on a qualified adviser when Dr. Elick established SDG and petitioner entered into the management agreement. Petitioner emphasizes that adviser's credentials. Respondent asserts that the adviser is irrelevant because he only arranged the ESOP and did not review petitioner's tax returns for 2005 and 2006.

**[\*16]** Respondent further argues that petitioner's return preparer never advised the management fees were necessary or reasonable. Thus, petitioner cannot rely on guidance from the return preparer. We agree with respondent.

Petitioner was advised in 2002 regarding SDG and the management agreement. Respondent challenged the management fee deductions claimed for 2005 and 2006. Petitioner did not demonstrate that a professional advised it that the management fees were necessary or reasonable. Rather, the record demonstrates that Dr. Elick determined the annual management fee. He then provided that amount to his return preparer. There is no indication that Dr. Elick provided his return preparer all necessary information to determine whether the management fees satisfied the requirements of section 162. Nor is there any indication that any tax professional audited those amounts or determined that the management fees were necessary or reasonable. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

We find that petitioner did not act under the relevant facts and circumstances with reasonable cause and in good faith with respect to 2005 and 2006. We therefore hold petitioner liable for the accuracy-related penalties under section 6662(a).

**[\*17]**        2. <u>The Elicks</u>

The Elicks do not challenge that they failed to materially participate in the passive activities. And the record does not reflect that the Elicks made a reasonable attempt to comply with the Code. Respondent has therefore met his burden of production. The Elicks have not argued or shown that they acted with reasonable cause or in good faith. We find therefore that the Elicks did not act under the relevant facts and circumstances with reasonable cause and in good faith with respect to the years at issue. We accordingly hold that the Elicks are liable for the accuracy-related penalties under section 6662(a).

B.        <u>Addition to Tax for Late Filing</u>

We next turn to whether the Elicks are liable for the late-filing addition to tax under section 6651(a)(1) for 2006. The late-filing addition to tax is imposed for failure to file a tax return on or before the specified filing date unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985). The Commissioner has the burden of production with respect to an addition to tax. Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. at 446. To meet this burden, the Commissioner must produce sufficient evidence establishing that it is appropriate to impose the addition to tax. See <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

**[\*18]** If the Commissioner meets his burden, then the taxpayer bears the burden of proving that the late filing was due to reasonable cause and not willful neglect. Id. at 446.

Respondent determined that the Elicks are liable for the late-filing addition to tax regarding the return for 2006. The Elicks acknowledge that they filed the 2006 return late. Respondent has accordingly met his burden.

The Elicks argue nevertheless that they acted with reasonable cause and without willful neglect because they were waiting for a third party to issue a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., of a Form 1065. Respondent argues that the Elicks failed to show reasonable cause. We agree with respondent.

A taxpayer is responsible for timely filing returns and may not passively wait for a third party to provide documentation. Feldman v. Commissioner, T.C. Memo. 1993-17, aff'd, 20 F.3d 1128 (11th Cir. 1994); see also LFAM Corp. v. United States, 42 Fed. Cl. 698, 703 (1999) (late-filing addition to tax imposed against taxpayer that passively waited for third party to issue Schedule K-1). The Elicks failed to establish that they actively sought the information or that they were unable to reasonably estimate their tax. Petitioners did not corroborate

**[*19]** testimony that they requested the information.  We will therefore sustain the late-filing addition to tax.

We have considered all remaining arguments the parties made and, to the extent not addressed, we find them to be irrelevant, moot or meritless.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155 in docket No. 23767-10</u>.

<u>Decision will be entered for</u>

<u>respondent in docket No. 23768-10</u>.