T.C. Memo. 2016-147

UNITED STATES TAX COURT

LITTLE MOUNTAIN CORPORATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 581-15.                              Filed August 8, 2016.

Steven A. Wilson, for petitioner.

Rollin George Thorley, David W. Sorensen, and Rebekah A. Myers, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge:  Respondent determined a deficiency in petitioner's

Federal income tax of $361,080 for its taxable year ending October 31, 2011.

Unless otherwise indicated, all section references are to the Internal Revenue Code

(Code) in effect for the year in issue, and all Rule references are to the Tax Court

**[\*2]** Rules of Practice and Procedure.  All monetary amounts are rounded to the

nearest dollar.

Before trial petitioner conceded that it was not entitled to an investment

expense deduction of $83,756 or a deduction of $52,879 for payments against

promissory notes.  The remaining issue for consideration is whether petitioner may

deduct consulting fees of $896,493 for tax year 2011.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are

incorporated in our findings by this reference.[1]  Little Mountain Corporation

(Little Mountain) is organized under the laws of Nevada.  Petitioner's legal office

of record and mailing address were in Nevada when it timely filed its petition.

Petitioner's Organizational Structure

On March 10, 1998, petitioner was incorporated under the laws of Nevada.

From the date of its organization through the year in issue, petitioner had two

shareholders:  Uisge-Beatha Partners (UBP), a limited partnership owning 51%,

and the Balm of Gilead Irrevocable Trust (BGIT), which owned the remaining

---

[1]The parties both reserved objections to some of the stipulations, and indicated that they would address these objections in their posttrial briefs.  The parties, however, did not address in their briefs the stipulations for which they had reservations beyond the objections included in the stipulations.  The parties' reserved objections are therefore deemed waived.

**[*3]** 49%. UBP was formed in 1998 with general partner Susan Sanders owning 1% and BGIT owning the other 99%. Mrs. Sanders also formed BGIT in 1998, contributing a farmhouse in West Point, Tennessee, to the trust for the benefit of her seven children.

Mrs. Sanders has served as petitioner's assistant secretary and assistant treasurer for over 10 years, including the tax year in issue. Her duties include maintaining books, records, and vendor invoices, preparing the general ledger, keeping up with correspondences and paying bills. She also performs administrative tasks, including customer service, reloading printer cartridges, and stocking paper.

Mrs. Sanders is petitioner's custodian of records and receives $100 per year to act as petitioner's resident agent in Tennessee. Other than the resident agent fee, petitioner does not compensate Mrs. Sanders for her services. During the year in issue Mrs. Sanders was neither a shareholder nor a director of petitioner.

Scott Burnett is petitioner's president, secretary, and treasurer. He also serves as petitioner's nominee director and does not have any authority to make decisions on petitioner's behalf; his duties are limited to helping supervise meetings of the shareholders. Johnny R. Bain is petitioner's vice president, and Mrs. Sanders' son-in-law. In 2011 petitioner's officers were Mr. Burnett,

**[\*4]** Mr. Bain, and Mrs. Sanders. During the tax year in issue petitioner did not have any employees who received Forms W-2, Wage and Tax Statement.

Petitioner's Business

During 2011 petitioner was a gold and silver brokerage business that also published a monthly Internet financial newsletter. Petitioner purchased its business on November 17, 1998, from Mrs. Sanders' husband, Franklin Sanders. Little Mountain acquired Mr. Sanders' two sole proprietorships, the Moneychanger and Franklin Sanders, S.P., for $200,500 on the following terms: a $500 payment to Mr. Sanders upon the execution of the contract and a $200,000 promissory note, with the balance to be paid in full within 20 years from the date of the execution of the contract and interest not to exceed 8%. Petitioner operated its business in an office in the back of the farmhouse that Mrs. Sanders contributed to BGIT for the benefit of her seven children.

Mr. Sanders operated his sole proprietorships, Franklins Sanders, S.P., and the Moneychanger, for approximately 30 years before selling them to petitioner. Franklin Sanders, S.P., operated as a gold and silver exchange, and the Moneychanger was, and continues to be, a monthly Internet newsletter that covered the gold and silver market. The nature of the businesses remained the

**[*5]** same after petitioner's acquisition.  Mr. Sanders was never a shareholder of petitioner.

On its Form 1120, U.S. Corporation Income Tax Return, petitioner reported $63,002,681of gross receipts and $61,719,599 of cost of goods sold.  It deducted $896,493 for consulting services.  Its Form 1120 shows no salaries or wages paid for tax year 2011.  Petitioner did not distribute dividends to its shareholders for tax year 2011 or any prior year.

Pursuant to the minutes of a special meeting of petitioner's directors dated November 17, 1998, it was resolved that Mr. Sanders would be paid as an independent contractor on a "by-the-job" basis.  Petitioner also authorized Mr. Sanders to receive an annual bonus of one-fourth of 1% on any amount of petitioner's stated gross income that exceeded $10 million.  Mr. Sanders operated his business, Always Frank Consulting (AFC), as a sole proprietorship.

Petitioner provided no consulting fee schedule, hourly rate, or specific breakdown of Mr. Sanders' tasks.  No written contract existed between petitioner and AFC or Mr. Sanders.  Mrs. Sanders testified that there was only an oral agreement because "that's how it's done a lot of times in the South".  AFC operated out of the same property as petitioner.

**[*6]** The invoices from AFC provided the amounts due for "consulting, writing, and managerial fees". The invoices did not detail what services were performed that accounted for the totals on the invoices. Neither Mr. Sanders nor Mrs. Sanders could testify with specificity as to what services were performed that accounted for the totals on the invoices.

Mrs. Sanders reviewed the invoices and determined whether they would be paid. Some invoices requested that petitioner issue several checks for the total amount due. All AFC invoices for "consulting" services requested that checks be issued in amounts less than $10,000. Mrs. Sanders kept a general ledger and recorded the payments to AFC on a monthly basis by writing the check number, the amount of the check, and whether the check was paid.

Mr. Sanders testified that he requested that petitioner make the checks payable to cash. Mr. Sanders further testified that he asked for several checks to be made out for each invoice because he did not want to keep a lot of cash around at one time. He did not report any amounts received from petitioner on his income tax return, and he did not file an income tax return for tax year 2011. Little Mountain never provided Mr. Sanders or AFC a Form 1099-MISC, Miscellaneous Income, for the consulting fees.

[*7]                                  OPINION

This case involves the strange situation of a corporation that claims to have no employees and no written contracts with any independent contractors, issued no information reports to any independent contractors, and enjoyed enormous amounts of income during the tax year in issue without paying any dividends to its shareholders. The corporation is owned by, through, or on behalf of family members of Mr. Sanders, who has not filed a Federal income tax return since 1991.[2]

Corporate records show that petitioner issued checks totaling $896,493 to a "consultant" during the year in issue, but the checks were made payable to "cash" and were negotiated by various individuals other than Mr. Sanders, some who had no visible role with respect to the corporation. The corporation's Federal income tax return for its fiscal year ending October 31, 2011, shows an $896,493 deduction for "compensation" attributable to these checks. This deduction is disallowed in the notice of deficiency and is here in dispute.

The taxpayer generally bears the burden of proving the Commissioner's determinations are erroneous. Rule 142(a). The taxpayer bears the burden of substantiating the amount and purpose of each item claimed as a deduction. See

_____

[2]The record strongly suggests that the corporation is Mr. Sanders' alter ego.

[*8] Higbee v. Commissioner, 116 T.C. 438, 440 (2001). Section 7491(a)(1) provides that if a taxpayer introduces credible evidence with respect to any factual issues relevant to ascertaining the taxpayer's liability, the Commissioner shall have the burden of proof with respect to that issue. Section 7491(a)(1) applies, however, only if the taxpayer complies with all substantiation and recordkeeping requirements under the Code. Sec. 7491(a)(2)(A) and (B).

Petitioner failed to substantiate that compensation was paid to Mr. Sanders or AFC and offered no evidence that the compensation was reasonable. The burden of proof remains with petitioner.

Deductions are a matter of legislative grace, and a taxpayer must prove its entitlement to any deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). To that end a taxpayer is required to substantiate the item underlying each claimed deduction by maintaining records sufficient to establish the amount of the item and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. at 440; sec. 1.6001-1(a), Income Tax Regs.

Section 162 permits a taxpayer to deduct ordinary and necessary business expenses paid or incurred during the taxable year, including "a reasonable allowance for salaries or other compensation for personal services actually

[*9] rendered". Sec. 162(a)(1). Petitioner contends that the compensation was paid to Mr. Sanders, who claims to have received the cash proceeds from the checks but who "wouldn't call it compensation" during his testimony.[3] The checks issued to "cash" did not bear any stated purpose for the expense.

Only the portion of an expense that is reasonable qualifies for deduction under section 162(a). United States v. Haskel Eng'g & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967); Fuhrman v. Commissioner, T.C. Memo. 2011-236, slip op. at 6. The reasonableness concept has particular significance in determining whether payments between related parties represent ordinary and necessary expenses. See Fuhrman v. Commissioner, slip op. at 7; see also Bittker & Lokken, Federal Taxation of Income, Estates, and Gifts, para. 20.1.5, at 20-18 (3d ed. 1999). Given the intrafamily transactions, a heightened level of scrutiny is applied. See Harwood v. Commissioner, 82 T.C. 239, 258 (1984), aff'd without published opinion, 786 F.2d 1174 (9th Cir. 1986); Holden v. Commissioner, T.C. Memo. 2015-83.

Petitioner provided neither documentary evidence nor testimony regarding how the consulting fees were determined. Petitioner provided no consulting fee

---

[3]Mr. Sanders' testimony concerning his failure to have filed Federal income tax returns for the relevant periods is certainly consistent with the position he has taken on this point.

[*10] schedule, hourly rate, or specific breakdown of its "consultant's" tasks. Neither Mr. nor Mrs. Sanders could testify with specificity as to what services were performed that accounted for the totals on the checks issued. There was no written contract for the consulting fees, and petitioner never issued any Forms 1099.

Petitioner did not provide us with sufficient evidence to persuade us that the expense was both ordinary and necessary, and reasonable. Applying a heightened level of scrutiny, we sustain respondent's disallowance of the consulting fees.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.