# United States Tax Court

T.C. Memo. 2023-105

GARY J. SINOPOLI, JR. AND MELISSA M. SINOPOLI, ET AL.,[1]
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

—————

Docket Nos. 10838-20, 10840-20, 26360-21.                    Filed August 14, 2023.

—————

*Philip M. Anthony*, *Dustin R. Jeffords*, and *Thomas Walton Dallas*, for petitioners in Docket Nos. 10838-20 and 10840-20.

*Dustin R. Jeffords*, for petitioners in Docket No. 26360-21.

*Andrew J. Lorenz, John K. Parchman, Emile L. Hebert*, and *Ardney J. Boland*, for respondent in Docket Nos. 10838-20 and 10840-20.

*Andrew J. Lorenz, John K. Parchman, Aaron E. Cook*, and *Ardney J. Boland*, for respondent in Docket No. 26360-21.

## MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, *Judge*: Respondent determined the following deficiencies in these consolidated cases for 2015, 2016, and 2017: Gary J. Sinopoli and Melissa M. Sinopoli, $53,928, $73,992, and $22,566, respectively; Robert J. Siragusa, $51,208, $73,992, and $44,680,

---

[1] Cases of the following petitioners are consolidated herewith: Robert J. Siragusa, Docket No. 10840-20; and Michael D. Hurring and Angela M. Hurring, Docket No. 26360-21.

[*2] respectively; and Michael D. Hurring and Angela M. Hurring, $51,208, $73,991, and $44,682, respectively.[2]

The deficiencies result from the disallowance of rent and advertising expense deductions claimed by a subchapter S corporation, Planet LA, LLC (Planet), jointly owned by Dr. Gary Sinopoli, Dr. Siragusa, and Mr. Hurring (collectively, petitioners).[3] The issues for decision are whether Planet is entitled to business expense deductions for rent and advertising that respondent disallowed for the years at issue.[4] We hold that Planet is entitled to deduct $6,000 in rent for 2015, and the remainder of the expenses at issue is disallowed.

## FINDINGS OF FACT

Petitioners resided in Mississippi when they timely filed their petitions.[5] Dr. Sinopoli and Dr. Siragusa are anesthesiologists and Mr. Hurring is an orthopedic representative, and they met through their work. In June 2011 petitioners formed Planet. Dr. Siragusa owned 33.34%, and Dr. Sinopoli and Mr. Hurring each owned 33.33%. Planet used the accrual method of accounting and a calendar year to report its operations for federal income tax purposes. During the years at issue Planet's principal place of business was in Mississippi.

---

[2] Mrs. Sinopoli, Mrs. Hurring, and Mrs. Jonica M. Siragusa each filed joint returns with their spouses for the years at issue. Mrs. Siragusa is not a party in Docket No. 10840-20. Mrs. Sinopoli and Mrs. Hurring did not participate in the trial.

[3] A subchapter S corporation is a "small business corporation for which an election under [I.R.C.] section 1362(a)" has been made. I.R.C. § 1361(a)(1). Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

S corporations are afforded special treatment under the Internal Revenue Code. "One of the benefits of S corporation tax status is that income earned by the entity escapes corporate-level taxation." *Mourad v. Commissioner*, 121 T.C. 1, 3 (2003), *aff'd*, 387 F.3d 27 (1st Cir. 2004). "Thus, an S corporation's income passes through the entity and is, generally, taxed only at the shareholder level on a pro rata basis." *Id.*; *see* I.R.C. §§ 1363, 1366.

[4] In their Posttrial Briefs petitioners assert that they should not be liable for section 6662 accuracy-related penalties. Respondent did not determine any penalties in the notices of deficiency, and petitioners are not liable for any penalties. Any remaining adjustments are computational.

[5] Mr. and Mrs. Hurring's Petition, sent by certified mail dated July 23, 2021, was timely under the mailbox rule of section 7502(a)(1).

**[*3]** Planet was a franchisee of Planet Fitness, a national chain of fitness centers, and owned multiple fitness centers in Louisiana. It opened its first fitness center in May 2013 after some initial difficulty in finding a location. In 2015 it had three fitness centers, and it opened two additional centers by 2017. Sometime in mid-2017 Planet sold its franchises and other assets.

Petitioners reported income from Planet on Schedule E, Supplemental Income and Loss, of their personal returns. Respondent determined the above deficiencies by notices of deficiency dated January 23, 2020, issued separately to Dr. Siragusa and Mrs. Siragusa, a notice of deficiency dated February 6, 2020, issued jointly to Dr. and Mrs. Sinopoli, and a notice of deficiency dated April 29, 2021, issued jointly to Mr. and Mrs. Hurring.

I.  *Rental Expenses*

Before 2015 petitioners met occasionally at a hospital where they worked or at Planet's fitness center in Gretna, Louisiana, to discuss Planet's business. Because of the distance and petitioners' work schedules, it was difficult for them to schedule meetings where all three petitioners could attend. Often one petitioner was absent from these meetings because of scheduling problems. Beginning in 2015 petitioners arrived at a plan to have Planet pay them rent for the use of their homes for business meetings in their personal residences. When meetings were actually held, they were generally the only attendees but occasionally one of the wives attended. Other family members were home during some meetings. Petitioners failed to produce any credible evidence of what business was conducted at such meetings, and their testimony was vague and unconvincing regarding the meetings.

Planet paid rent to petitioners for the use of their residences. Petitioners did not obtain an appraisal of the rental value of their residences as meeting space. Dr. Sinopoli researched rental rates for meeting spaces where petitioners lived and determined that meeting spaces rented at a rate of $1.83 per square foot, which petitioners used to calculate rent for the residences' common areas. Initially, the monthly rent to each petitioner (based on the size of the common space) was different. Sometime in 2016 through September 2017 Planet began paying $3,000 in monthly rent to each petitioner. During the years at issue it paid rent and reported rent expenses as follows:

| [*4] Year | Dr. Sinopoli | Dr. Siragusa | Mr. Hurring | Total |
|---|---|---|---|---|
| 2015 | $30,000 | $36,000 | $30,400 | $96,400 |
| 2016 | 40,000 | 33,000 | 40,500 | 113,500 |
| 2017 | 27,000 | 27,000 | 27,000 | 81,000 |

For each year at issue Dr. Sinopoli and Dr. Siragusa reported the rent as income on Schedule E of their personal returns and excluded it from their gross income pursuant to section 280A(g), which provides that rental income from the rental of a taxpayer's residence is not included in gross income if the residence is rented for no more than 14 days in a taxable year. Mr. Hurring reported the rent for 2015 and 2017 and excluded it from gross income. He did not report it for 2016.

Revenue Agent (RA) Jacob Burgess was assigned to examine Planet's S corporation returns and petitioners' personal returns for the years at issue. He researched the local rental rate for meeting space and determined that locally available meeting space accommodating 500 to 1,200 people rented for approximately $500 for a full or half day. He sustained a $500 rent expense for each meeting that they substantiated with notes of an actual meeting. They did not provide any meeting notes for 2015 but substantiated 12 meetings at Dr. Sinopoli's residence during 2016 and 9 meetings at Mr. Hurring's residence during 2017. Accordingly, respondent disallowed the rent deduction for 2015 in its entirety and allowed rent expense deductions of $6,000 and $4,500 for 2016 and 2017, respectively.

## II. Advertising Expenses

Planet engaged in national and local advertising as required by its franchise agreement. It paid for national advertising through a system in which the franchisor retained part of the membership fees that it collected for Planet's fitness centers, paid over part of the collected fees to Planet, and retained part for various franchisee charges including national advertising fees. Planet reported expenses paid in this manner for national advertising, and those expenses are not at issue.

For local advertising petitioners primarily engaged the services of companies that they met at Planet Fitness's annual franchise conferences. Local advertising included print and email marketing,

[*5] corporate events, and radio and TV commercials. During the years at issue petitioners decided to increase Planet's advertising to attract more gym members and to develop Planet's business with the idea of a potential sale of the business after learning that private equity groups were interested in purchasing franchises.

When Planet started its business, it paid local advertising expenses directly to the local advertisers. In November 2014 Planet changed this practice. Each petitioner organized a C corporation under the laws of Mississippi. Dr. Sinopoli incorporated GJS Marketing, Inc. (GJS), Dr. Siragusa incorporated RJS Marketing, Inc., and Mr. Hurring incorporated MDH Marketing, Inc. (collectively, marketing companies). The marketing companies used the cash method of accounting and a fiscal year ending November 30 to report their operations for federal income tax purposes. (We refer to the marketing companies' taxable years ended November 30, 2015, 2016, and 2017, as taxable years 2015, 2016, and 2017.)

Petitioners were the sole officers of the marketing companies in which they held ownership interests. Dr. Sinopoli was the sole shareholder of GJS. Dr. Siragusa and Mr. Hurring owned small percentages of their respective companies; and although they allowed others to hold the remaining shares, they controlled the marketing companies.[6] Petitioners instructed Planet's local advertisers to bill the marketing companies, and Planet began to pay fees to the marketing companies (marketing fees). The marketing fees were the marketing companies' only source of income. The marketing companies did not perform marketing or other services for other businesses. They did not report any wage expenses on their corporate returns.

RA Burgess examined the marketing companies' corporate returns for the taxable years 2015, 2016, and 2017. He determined that the marketing fees exceeded the amounts that the marketing companies paid to the local advertisers. He determined that Planet substantiated the business purpose of part of the marketing fees equal to the amount that the marketing companies paid to local advertisers and disallowed its reported expenses for the remainder of the marketing fees (excess

---

[6] Although Dr. Sinopoli stipulated that he was GJS's sole shareholder, he testified that he did not own 100% of GJS. His testimony was inconsistent with the stipulation. Furthermore, while petitioners controlled the marketing companies, control and ownership are not the primary issues. Rather, the question we address is whether Planet has substantiated the business expense deductions claimed for marketing fees in excess of those allowed in the notices of deficiency.

[*6] marketing fees). For the years at issue Planet's returns claimed advertising expense deductions including national and local advertising and marketing fees paid to the marketing companies, which respondent allowed and disallowed as follows:

| Year | Planet's expenses | Marketing fees | Paid to local advertisers | Disallowed |
|---|---|---|---|---|
| 2015 | $676,544 | $483,000 | $202,757 | $280,243 |
| 2016 | 941,736 | 740,015 | 303,282 | 436,733 |
| 2017 | 634,680 | 506,260 | 254,092 | 252,168 |

The disallowed expense deductions were not shown by petitioners to be for actual marketing expenses in the record of trial.

The marketing companies filed corporate returns and paid tax for their taxable years 2015, 2016, and 2017. Respondent has not proposed adjustments or issued notices of deficiency to them. The amount of the marketing fees which Planet expensed as respondent determined approximates the amount of combined gross receipts that the marketing companies reported on their corporate returns for the taxable years 2015, 2016, and 2017: $498,960, $715,015, and $531,260, respectively. Respondent allowed Planet to deduct marketing fees in an amount equal to the marketing companies' combined advertising expenses for 2016 and 2017, but for 2015 the marketing companies expensed $240,587, and respondent allowed $202,757.

OPINION

Petitioners bear the burden of proof to substantiate the corporate expenses at issue in these cases. *See* Rule 142(a)(1). Taxpayers are required to substantiate expenses reported on passthrough corporate returns. I.R.C. § 6001; *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).

Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Whether an expense is ordinary and necessary is a question of fact. *Commissioner v. Heininger*, 320 U.S. 467, 475 (1943). An expense is ordinary if it is usual or customary in the taxpayer's trade or business. *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). An expense is necessary if

**[\*7]** it is appropriate or helpful in carrying on the trade or business. *Heineman v. Commissioner*, 82 T.C. 538, 543 (1984). Even if an expense is ordinary and necessary, the expense is deductible only to the extent that it is reasonable in amount. *Audano v. United States*, 428 F.2d 251, 256–57 (5th Cir. 1970); *Ciaravella v. Commissioner*, T.C. Memo. 1998-31. The requirement of reasonableness is inherent in the phrase "ordinary and necessary" in section 162. *Fuhrman v. Commissioner*, T.C. Memo. 2011-236, slip op. at 6. The reasonableness concept has particular significance in dealings between related parties. *Id.*

I.    *Rent Expenses*

Respondent argues that petitioners have substantiated only 12 and 9 meetings that occurred during 2016 and 2017, respectively, and no meetings for 2015. He further argues that the amount of rent paid for each meeting, between $3,000 and $4,000, was not reasonable.

Petitioners have not presented any written documentation such as minutes, agendas, or calendars showing that all the claimed meetings occurred during the years at issue to substantiate rent deductions of Planet. Furthermore, we find that petitioners' testimony was not credible as to the frequency of meetings during the years at issue. Their testimony was inconsistent and included testimony that petitioners did not recall the number of meetings that took place. Planet deducted rent expenses for three meetings per month, once at each residence. Petitioners have not established that meetings occurred at that frequency. They have established only one meeting per month for January 2016 through September 2017. Respondent has allowed in the notices of deficiency a $500 rent deduction for each meeting. Petitioners have also established with their testimony that some meetings occurred during 2015. Accordingly, we will allow a deduction of rent for 12 meetings for 2015.

Petitioners have not established the reasonableness of the rent with documentation or credible testimony. Planet deducted $290,900 in rent that it purportedly paid to petitioners over less than three years. We agree with respondent that it seems that petitioners adopted a tax savings scheme to distribute Planet's earnings to petitioners through purported rent payments, claim rent deductions, and exclude the rent from their gross income relying on section 280A(g). While petitioners argue that the $500 rent determined by RA Burgess was not reasonable, we disagree and find to the contrary that $500 allowed per month is actually generous. Obviously, only small portions of the residences were

**[\*8]** used for the meetings when they occurred. We hold that Planet is entitled to deduct $6,000 for 2015 (12 meetings × $500) and has previously been allowed an expense deduction for rent of $500 per month for each month from January 2016 through September 2017.

II.   *Advertising Expenses*

Respondent disallowed Planet's advertising expense deductions for the excess marketing fees on the basis that petitioners have not substantiated the amounts paid for advertising. He argues that there was no change in the local advertisers or the services provided after the marketing companies were incorporated and Planet started paying the marketing fees. He argues that the marketing fees, like the purported rent payments, were a means to distribute earnings from Planet to petitioners for their personal use.

There is a total lack of evidence in the record to support the excess marketing fees. The testimony regarding these fees was vague, self-serving, and not credible. No applicable documentation was offered. Petitioners did not establish through credible testimony or documentation that Planet paid the excess marketing fees for advertising services. They did not establish with credible evidence that the marketing companies performed any services other than paying bills or that they had employees. We do not find credible their testimony about the marketing companies including the reason that they started the marketing companies. There was no evidence in the record that the marketing companies continued operations after Planet was sold.

Petitioners did not substantiate the business purpose of the excess marketing fees. Planet is not entitled to treat them as business expenses, and respondent's disallowance is sustained. The fact that the marketing companies reported the excess marketing fees as gross receipts and paid tax for the years at issue does not establish that Planet has paid the excess marketing fees for advertising services as an ordinary and necessary business expense.

We have considered all other arguments that the parties made and, to the extent not discussed above, find the arguments to be irrelevant, moot, or without merit. To reflect the foregoing,

*Decisions will be entered under Rule 155.*